1   Terrence J. Coleman (State Bar No. 172183)
2   Brian H. Kim        (State Bar No. 215492)
    PILLSBURY & LEVINSON, LLP
3   The Transamerica Pyramid
    600 Montgomery St., 31st Floor
4   San Francisco, California 94111
    Telephone: (415) 433-8000
5   Facsimile:  (415) 433-4816
    Email: tcoleman@pillsburylevinson.com, bkim@pillsburylevinson.com
6
7   Attorneys for Plaintiff
    ELIZABETH FOWLER
8
                    UNITED STATES DISTRICT COURT
9
                 NORTHERN DISTRICT OF CALIFORNIA
10

11
    ELIZABETH FOWLER,                    )   Case No.  CV-08-3463 (MEJ)
12                                       )
                    Plaintiff,           )   **PLAINTIFF'S REQUEST FOR**
13                                       )   **JUDICIAL NOTICE IN**
    v.                                   )   **OPPOSITION TO DEFENDANTS'**
14                                       )   **MOTION TO DISMISS  [FED. R.**
    AETNA LIFE INSURANCE COMPANY;        )   **CIV. P. 12(b)(6)] AND MOTION TO**
15  THE PARSON BRINCKERHOFF GROUP        )   **STRIKE [FED. R. CIV. P. 12(f)**
    ADMINISTRATION INC. SHORT TERM       )
16  DISABILITY PLAN; THE PARSONS         )
    BRINCKERHOFF GROUP                   )
17  ADMINISTRATION, INC. LONG TERM       )   DATE:      September 18, 2008
    DISABILITY PLAN; and DOES 1 through  )   TIME:      TBA
18  20,                                  )   DEPT:      TBA
                                         )   JUDGE:     TBA
19                  Defendants.          )
                                         )
20  ───────────────────────────────────

21      In support of her opposition to Defendants' Motion to Dismiss/Motion to

22  Strike, Plaintiff Elizabeth Fowler hereby requests that the Court take judicial notice of

23  the following documents pursuant to Rule 201 of the Federal Rules of Evidence:

24      1.    The Complaint filed on behalf of Plaintiff in San Francisco County

25  Superior Court, a true and correct copy of which is attached hereto as **Exhibit A**.

26      2.    The Brief For The United States Amicus Curiae Supporting Petitioners,

27  filed on December 18, 2003 in the case of *Aetna Health, Inc. v. Davila*, 524 U.S. 200

28  (2004), a true and correct copy of which is attached as **Exhibit B**.  A true and correct

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1    copy of the brief is also available on Westlaw at 2003 WL 23011479.  Plaintiff

2    respectfully requests the Court to take judicial notice of this brief and, in particular,

3    footnote 13 concerning the position of the United States with respect to the

4    availability of "make-whole" relief against a breaching fiduciary under ERISA.

5          3.     The Order in *Edwards v. The Prudential Life Ins. Co. of Amer.*, C 07-05807

6    (N.D. Cal. January 7, 2008) denying Defendant The Prudential Life Insurance

7    Company of America's Motion to Dismiss Plaintiff Elizabeth Edwards' claim for

8    equitable relief under section 502(a)(3) of the Employment Retirement Income

9    Security Act, a true and correct copy of which is attached as **Exhibit C**.  Plaintiff

10   respectfully requests the Court to take judicial notice of this Order, in particular,

11   pages 10 through 12 where the Court discussed the reasons for declining to dismiss

12   the Plaintiff's equitable relief claim.

13

14   DATED:  August 28, 2008              PILLSBURY & LEVINSON, LLP

15

16                                        By:  _____/s/_____
17                                             Brian H. Kim, Esq.
                                               Attorneys for Plaintiff
18                                             ELIZABETH E. FOWLER

19

20

21

22

23

24

25

26

27

28

RJN IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS/ MOTION TO STRIKE              CV-08-3463 (MEJ)

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

# EXHIBIT A

1  Arnold R. Levinson    (State Bar No. 066583)
2  Terrence J. Coleman   (State Bar No. 172183)
   Brian H. Kim          (State Bar No. 215492)
3  PILLSBURY & LEVINSON, LLP
   The Transamerica Pyramid
4  600 Montgomery St., 31st Floor
   San Francisco, California 94111
5  Telephone: (415) 433-8000
   Facsimile:  (415) 433-4816
6  Email:  alevinson@pillsburylevinson.com, tcoleman@pillsburylevinson.com
7  jwaelty@pillsburylevinson.com

8  Attorneys for Plaintiff
   ELIZABETH FOWLER

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

JUN 1 8 2008

GORDON PARK-LI, CLERK
BY: _____
          Deputy Clerk

10              SUPERIOR COURT CALIFORNIA

11                COUNTY OF SAN FRANCISCO

13  ELIZABETH FOWLER,                    )   Case No.  CGC-08-476089
                                         )
14              Plaintiff,               )   **FIRST AMENDED COMPLAINT
                                         )   FOR RECOVERY OF EMPLOYEE
15                                       )   BENEFITS AND EQUITABLE
    v.                                   )   RELIEF**
16                                       )
    AETNA LIFE INSURANCE COMPANY;        )   **JURY TRIAL DEMANDED**
17  THE PARSONS BRINCKERHOFF GROUP       )
    ADMINISTRATION, INC. SHORT TERM      )
18  DISABILITY PLAN;  THE PARSONS        )
    BRINCKERHOFF GROUP                   )
19  ADMINISTRATION, INC. LONG TERM       )
    DISABILITY PLAN; and DOES 1 through  )
20  20, inclusive,                       )
                                         )
21                                       )
                Defendants.              )
22  _____  )

24      Plaintiff alleges on information and belief as follows:

25                  **GENERAL ALLEGATIONS**

26      1.      Plaintiff ELIZABETH FOWLER is an individual currently residing in San

27  Francisco, California, who at all relevant times was residing in the State of California.

28  ///

2.     Defendant AETNA LIFE INSURANCE COMPANY ("AETNA") was and is a business entity authorized to transact business in the State of California, including the sale, issuance and administration of disability insurance and plan benefits.

3.     Defendant THE PARSONS BRINCKERHOFF GROUP ADMINISTRATION, INC. SHORT TERM DISABILITY PLAN ("the STD Plan") is a short-term disability plan that was offered by PARSONS BRINCKERHOFF GROUP ADMINISTRATION, INC. ("PARSONS BRINCKERHOFF"), Plaintiff's employer.  The Plan was and is an employee welfare benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").  At all relevant times, AETNA was the de facto plan administrator and claims fiduciary of the STD Plan.

4.     Defendant THE PARSONS BRINCKERHOFF ADMINISTRATION, INC. LONG TERM DISABILITY PLAN ("the LTD Plan") is a long-term disability plan that was offered by PARSONS BRINCKERHOFF.  The Plan was and is an employee welfare benefit plan governed by ERISA.  At all relevant times, AETNA was the de facto plan administrator and claims fiduciary of the LTD Plan.

5.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these Defendants by said fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when they have been ascertained.

6.     At all relevant times, Plaintiff was employed in San Francisco, California as a transportation specialist for PARSONS BRINCKERHOFF and as such was enrolled in the STD Plan and LTD Plan, which it offered and which were insured through a group disability contract issued by AETNA, Group Policy No. 101979.

7.     At all material times hereto, Plaintiff was insured under the STD Plan and LTD Plan.  Under the STD Plan and LTD Plan and California law governing the definition of total disability, AETNA promised, in relevant part, to pay monthly benefits in the event that she became unable to perform with reasonable continuity in the usual and customary manner the material and substantial duties of her own occupation.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-2-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1       8.     At all material times herein, Plaintiff complied with all the material provisions

2  pertaining to the STD Plan and LTD Plan and/or compliance was waived by Defendants.

3  While the Plan was in full force and effect, Plaintiff became disabled and entitled to benefits

4  under the terms of the Plan as a result of, *inter alia*, lumbar disc disease requiring 2-level disc

5  replacement surgery. Plaintiff has been, remains, and will be unable to perform the substantial

6  and material duties of her occupation.

7       9.     Shortly after becoming disabled, Plaintiff timely applied for disability benefits

8  under the STD Plan and LTD Plan.

9       10.     Without conducting any reasonable or thorough investigation and without any

10  evidence or information that Plaintiff's conditions had improved to allow a return to gainful

11  employment, AETNA wrongfully denied benefits on or about March 21, 2007.

12       11.     Thereafter, through counsel, Plaintiff timely appealed AETNA's termination of

13  benefits and provided additional and overwhelming evidence in support of her physical

14  impairments and continuing and permanent disability.

15       12.     In letters dated December 4, 2007, and April 15, 2008, AETNA purported to

16  deny Plaintiff's appeal and maintained its denial of benefits.

17       13.     As a direct and proximate result of the aforementioned acts of Defendants, and

18  each of them, Plaintiff suffered damages as outlined below.

19       14.     As the result of the actions of Defendants, and each of them, Plaintiff has been

20  improperly denied disability benefits together with interest thereon and has suffered further

21  and severe economic hardship and emotional distress.

22       15.     As a further result of the actions of Defendants, and each of them, Plaintiff has

23  been forced to engage the services of legal counsel for the purpose of obtaining her insurance

24  benefits.

25  ///

26  ///

27  ///

28  ///

**FIRST CAUSE OF ACTION**
<u>Recovery Of Employee Benefits</u>
**(Against all Defendants; 29 U.S.C. § 1132(a)(1)(B))**

16.    Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 15 of this Complaint as though fully set forth herein.

17.    At all relevant times, Plaintiff was insured under the STD Plan and LTD Plan and Defendants were responsible for the administration and handling of Plaintiff's benefits.

18.    At all material times herein, Plaintiff has complied with all the material provisions pertaining to the STD Plan and LTD Plan, and/or compliance has been waived or Defendants are estopped from asserting non-compliance.

19.    While the STD Plan and LTD Plan were in full force and effect, Plaintiff became and remains totally disabled and entitled to receive benefits under the STD Plan and LTD Plan.

20.    AETNA, however, denied Plaintiff's claim for benefits and has refused and continues to refuse to make monthly disability payments to Plaintiff.  Plaintiff appealed AETNA's termination of benefits and exhausted her administrative remedies.

21.    Defendants' refusal to pay Plaintiff benefits violates the terms of the STD Plan and LTD Plan, and Defendants' actions in administering Plaintiff's claim and in denying benefits were arbitrary and capricious.  At all material times herein, Defendants, and each of them, failed and refused to honor the STD Plan and LTD Plan.  Defendants are liable for all benefits due under the STD Plan and LTD Plan, which have been improperly withheld from Plaintiff.  Plaintiff's physical conditions are permanent.  Accordingly, Plaintiff is and will continue to be entitled to monthly disability benefits through the applicable maximum benefit period of the STD Plan and LTD Plan.

22.    As a proximate result of Defendants' actions, Plaintiff has been deprived of her disability benefits to which she was and is entitled and has suffered damage as set forth in Paragraphs 13-15 above.  Plaintiff further seeks a declaration as to her entitlement to future

///

-4-

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

1

2  benefits, to wit:  an injunction prohibiting Defendants from terminating her benefits until the

3  end of the maximum benefit period or such other declaration the Court deems proper.

4  **SECOND CAUSE OF ACTION**
**Equitable Relief**

5  **(Against AETNA, and DOES 11-20; 29 U.S.C. §1132(a)(3))**

6         23.    Plaintiff realleges and incorporates by reference herein Paragraphs 1 through 22

7  of this Complaint as though fully set forth herein.

8         24.    At all material times herein, Defendants, and each of them, were fiduciaries

9  with respect to their exercise of authority over the management of the STD Plan and LTD

10  Plan, disposition of STD Plan and LTD Plan assets, and administration of the STD Plan and

11  LTD Plan.

12         25.    Plaintiff asserts a breach of fiduciary duty against AETNA as an individual

13  STD Plan and LTD Plan participant and on behalf of all other participants and beneficiaries of

14  the STD Plan and LTD Plan.

15         26.    Plaintiff asserts that a claim for benefits due under the STD Plan and LTD Plan

16  does not provide her with an adequate remedy at law in light of AETNA's continuing course of

17  conduct in violating the terms of the STD Plan and LTD Plan and applicable law as described

18  below.

19         27.    Defendants, and each of them, were obliged to discharge their duties solely in

20  the interests of beneficiaries and participants for the exclusive purpose of providing

21  beneficiaries and participants benefits, defraying reasonable expenses of the STD Plan and

22  LTD Plan, using all prudent skill and diligence in accordance with the documents and

23  instruments governing the STD Plan and LTD Plan.

24         28.    At all material times herein, Defendants, and each of them, violated these duties

25  by, *inter alia,* the following:

26         A.    Consciously and unreasonably and intentionally and with out

27                justification denying Plaintiff's claim for disability benefits, and related

28                claims and/or similar claims, despite knowledge that Plaintiff and

-5-

FIRST AMENDED COMPLAINT FOR RECOVERY OF
EMPLOYEE BENEFITS AND EQUITABLE RELIEF

Case No. CGC-08-476089

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor - San Francisco, CA 94111

similarly situated claims are and remain totally disabled under the terms and conditions of the STD Plan and LTD Plan and under the definition of total disability as defined by California law;

B.    Consciously and unreasonably delaying the decision concerning Plaintiff's claim, and related claims and/ or similar claims, for disability benefits;

C.    Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim, and related claims and/or similar claims, for benefits and consciously and unreasonably failing to investigate all bases to support coverage, fairly and in good faith and refusing to give Plaintiff's interests or the interests of the STD Plan and LTD Plan at least as much consideration as they gave their own;

D.    Consciously and unreasonably asserting improper bases for denying Plaintiff's claim, and related claims and/ or similar claims, for disability benefits;

E.    Consciously and unreasonably delaying, refusing, and continuing to refuse to pay Plaintiff benefits, and related claims and/or similar claims for benefits, properly payable under the STD Plan and LTD Plan and to deprive Plaintiff of her rightful benefits with the knowledge that said delays and denials were and are wrongful and contrary to their obligations under the STD Plan and LTD Plan and the law, including intentionally failing to apply the correct definition of disability under California law to all of the STD Plan and LTD Plan participants to whom that definition applies;

F.    Consciously and unreasonably failing to adopt and  implement reasonable or proper standards applicable to the prompt and fair investigation, processing and adjudication of Plaintiff's claim, and related claims and/or similar claims,  under the STD Plan and LTD Plan;

-6-

G.   Consciously and unreasonably interpreting the STD Plan and LTD Plan in a manner designed to deny benefits and in a manner that thwarts the reasonable expectations of the STD Plan and LTD Plan's beneficiaries and participants in order to maximize profits and minimize the benefits paid to claimants;

H.   Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are payable and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

I.   Consciously and unreasonably failing to follow the terms of the STD Plan and LTD Plan and applicable regulations governing the administration of claims, the review of denied claims, and required production of relevant documents.

29.   Plaintiff further alleges that Defendants, and each of them, have breached their fiduciary duties by misapplying, misinterpreting and/or ignoring relevant provisions of the STD Plan and LTD Plan, and hereby requests a judgment permanently enjoining Defendants from interpreting the STD Plan and LTD Plan in the following ways:

A.   From denying benefits based upon an interpretation of "total disability" different from that required under applicable law and the STD Plan and LTD Plan, including the requirement that a claimant be unable to work with reasonable continuity in the usual and customary way; and

B.   From obtaining input from biased medical consultants with a conflict of interest with Defendants who are not appropriately trained and experienced in the conditions that are the subject of the claim;

30.   Plaintiff further requests judgment permanently enjoining Defendants from ever again serving as a fiduciary with respect to the STD Plan and LTD Plan, together with attorneys' fees and costs.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

-7-

FIRST AMENDED COMPLAINT FOR RECOVERY OF
EMPLOYEE BENEFITS AND EQUITABLE RELIEF

Case No. CGC-08-476089

31.   In addition, Plaintiff seeks appropriate equitable relief from the Defendants, and each of them, and seeks an order by this Court that her total disability benefits be reinstated, that Defendants be enjoined from terminating benefits for the duration of the applicable maximum benefit period under the Plan, and that she be placed in the position she would have been in had she been paid the benefits to which she is entitled, including, without limitation, interest, attorneys fees and other losses resulting from Defendants' breach.

WHEREFORE, Plaintiff prays as follows:

1.   For a determination that Plaintiff is entitled to receive benefits under the STD Plan and LTD Plan and an injunction mandating the payment of benefits to Plaintiff for the maximum benefit period under the STD Plan and LTD Plan;

2.   For damages according to proof;

3.   For general damages according to proof;

4.   For attorneys' fees and costs of suit incurred herein;

5.   For interest;

6.   For equitable and injunctive relief as set forth above; and

7.   For such other and further relief as the Court may find appropriate.

**JURY TRIAL IS HEREBY DEMANDED**

DATED: June 18, 2008

PILLSBURY & LEVINSON, LLP

By: _____
Brian H. Kim, Esq.
Attorneys for Plaintiff
ELIZABETH FOWLER

FIRST AMENDED COMPLAINT FOR RECOVERY OF
EMPLOYEE BENEFITS AND EQUITABLE RELIEF

Case No. CGC-08-476089

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

# EXHIBIT B

Nos. 02-1845 and 03-83

# In the Supreme Court of the United States

AETNA HEALTH INC., FKA AETNA U.S. HEALTHCARE
INC. AND AETNA U.S. HEALTHCARE OF
NORTH TEXAS INC., PETITIONER

*v.*

JUAN DAVILA

CIGNA HEALTHCARE OF TEXAS, INC., DBA CIGNA
CORPORATION, PETITIONER

*v.*

RUBY R. CALAD, ET AL.

*ON WRITS OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS
AMICUS CURIAE SUPPORTING PETITIONERS**

HOWARD M. RADZELY
*Solicitor of Labor*
ALLEN H. FELDMAN
*Associate Solicitor*
NATHANIEL I. SPILLER
*Deputy Associate Solicitor*
EDWARD D. SIEGER
*Attorney
Department of Labor
Washington, D.C. 20210*

PAUL D. CLEMENT
*Acting Solicitor General
Counsel of Record*
EDWIN S. KNEEDLER
*Deputy Solicitor General*
JAMES A. FELDMAN
*Assistant to the Solicitor
General
Department of Justice
Washington, D.C. 20530-0001
(202) 514–2217*

**QUESTION PRESENTED**

Under *Metropolitan Life Insurance Co.* v. *Taylor*, 481 U.S. 58 (1987), certain state-law claims can be removed from state to federal court if they fall within the scope of the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. 1132(a), and are thereby "completely preempted." The question presented is whether ERISA completely preempts state-law claims by an ERISA plan participant or beneficiary against a health maintenance organization (HMO) where the claims challenge an HMO's decision to deny coverage of treatment or care that was prescribed by the claimant's physician but that the HMO decided was not authorized under the plan's "medical necessity" proviso.

(I)

TABLE OF CONTENTS

Page

Interest of the United States ........................................................ 1

Statement: 2

   1. *Aenta Health Inc.* v. *Davila* ........................................ 2

   2. *Cigna HealthCare of Texas, Inc.* v. *Calad* ............... 4

   3. The court of appeals' decision ...................................... 5

Summary of argument ................................................................ 6

Argument:

   ERISA completely preempts respondents' state-
   law claims because they fall within the scope of
   Section 502(a) ..................................................................... 9

   A. State-law claims within the scope of Section 502(a)
      are removable from state to federal court ................. 9

   B. Respondent's claims fall within the scope of
      Section 502(a)(1)(B) ......................................... 12

   C. The fact that plaintiffs' actions are tort-based
      underscores their complete preemption .................... 17

   D. *Pegram* v. *Herdrich* does not bar complete pre-
      emption of respondents' claims .................................. 21

   E. Complete preemption effectuates the congres-
      sional balance between providing prompt and
      appropriate remedies for claimants and
      encouraging the formation and growth of employee
      benefit plans ................................................................. 25

Conclusion ................................................................................. 28

TABLE OF AUTHORITIES

Cases:

   *Allis-Chalmers Corp.* v. *Lueck,* 471 U.S. 202
      (1985) ................................................................................. 19

   *Beneficial Nat'l Bank* v. *Anderson,* 123 S. Ct. 2058
      (2003) ........................................................................... 9, 10, 15

(III)

IV

Cases—Continued:                                                    Page

*Black & Decker Disability Plan* v. *Nord*, 538 U.S.
    822 (2003) ...........................................................    27
*Bowerman* v. *Wal-Mart Stores, Inc.*, 226 F.3d 574
    (7th Cir. 2000) ....................................................    28
*Caterpillar Inc.* v. *Williams*, 482 U.S. 386 (1987) ..........    10
*Cicio* v. *Does*, 321 F.3d 83 (2d Cir.), petition for cert.
    filed, No. 03-69 (July 11, 2003) ...........................    21
*Dardinger* v. *Anthem Blue Cross & Blue Shield*,
    781 N.E.2d 121 (Ohio 2002) ................................    30
*Franchise Tax Bd.* v. *Construction Laborers
    Vacation Trust*, 463 U.S. 1 (1983) .......................    12
*Great-West Life & Annuity Ins. Co.* v. *Knudson*,
    534 U.S. 204 (2002)  ...........................................    27
*Healthcare Inc., In re*, 193 F.3d 151 (3d Cir. 1999),
    cert. denied, 530 U.S. 1242 (2000) ......................    29
*Heasley* v. *Belden & Blake Corp.*, 2 F.3d 1249 (3d
    Cir. 1993) ...........................................................    16
*Ingersoll-Rand Co.* v. *McClendson*, 498 U.S. 133
    (1990) ....................................................    7, 11, 18, 26, 29
*Kekis* v. *Blue Cross & Blue Shield of Utica-
    Watertown, Inc.*, 815 F. Supp. 571 (N.D.N.Y.
    1993) ...................................................................    16
*Kopicki* v. *Fitzgerald Auto. Family Employee
    Benefits Plan*, 121 F. Supp. 2d 467 (D. Md. 2000) ..........    16
*Kulakowski* v. *Rochester Hosp. Serv. Corp.*,
    779 F. Supp. 710 (W.D.N.Y. 1991) ....................    16-17
*Lockheed Corp.* v. *Spink*, 517 U.S. 882 (1996) ..................    26
*Marro* v. *K-III Communications Corp.*, 943 F.
    Supp. 247 (E.D.N.Y. 1996) ...............................    16
*Massachusetts Mut. Life Ins. Co.* v. *Russell*,
    473 U.S. 134 (1985) ...........................................    21
*Mattive* v. *Healthsource of Savannah, Inc.*,
    893 F. Supp. 1559 (S.D. Ga. 1995) ......................    16
*Mertens* v. *Hewitt Assocs.*, 508 U.S. 248 (1993) ..............    27
*Metropolitan Life Ins. Co.* v. *Taylor*, 481 U.S. 58
    (1987) .........................................    4, 6, 10, 11, 12, 13, 15, 18, 20

V

| Cases—Continued: | Page |
|---|---|
| *Pegram* v. *Herdrich*, 530 U.S. 211 (2000) ....... | 8, 21, 22, 23, 24 |
| *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41 (1987) .... | *passim* |
| *Pryzbowski* v. *U.S. Healthcare, Inc.*, 245 F.3d 266 (3d Cir. 2001) ....................................................... | 16, 28, 29 |
| *Rush Prudential HMO, Inc.* v. *Moran*, 536 U.S. 355 (2002) .............................................................. | 8, 12, 18, 19, 20, 21, 23, 28 |
| *Shannon* v. *Jack Eckerd Corp.*, 113 F.3d 208 (11th Cir. 1997), cert. denied, 522 U.S. 1111 (1998) .................... | 17 |
| *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85 (1983) ........................................................................ | 26 |
| *Strom* v. *Goldman Sach & Co.*, 202 F.3d 138 (2d Cir. 1999) ........................................................................ | 28 |
| *UNUM Life Ins. Co.* v. *Ward*, 526 U.S. 358 (1999) ......... | 12 |
| *U.S. Healthcare, Inc., In re*, 193 F.3d 151 (3d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) .................... | 29 |
| *Varity Corp.* v. *Howe*, 516 U.S. 489 (1996) ......... | 17, 24-25, 27 |
| *Villazon* v. *Prudential Health Care Plan, Inc.*, 843 So. 2d 842 (Fla. 2003) ...................................... | 29 |
| *White* v. *Caterpillar, Inc.*, 765 F. Supp. 1418 (W.D. Mo.), aff'd, 985 F.2d 564 (8th Cir. 1991) ............. | 17, 27 |
| *Wilson* v. *Group Hospitalization & Med. Servs., Inc.*, 791 F. Supp. 309 (D.D.C. 1992), appeal dismissed, 995 F.2d 306 (D.C. Cir. 1993) ...................... | 16, 27 |

Statutes and regulations:

| Employee Retirement Income Security Act of 1974, | |
|---|---|
| Tit. I, 29 U.S.C. 1001 *et seq.* ................................................. | 6 |
| 29 U.S.C. 1001(b) ................................................................. | 26 |
| 29 U.S.C. 1002(13) ................................................................ | 1 |
| 29 U.S.C. 1002(21)(A)(iii) .................................................. | 24 |
| 29 U.S.C. 1109 (§ 409) ...................................................... | 21 |
| 29 U.S.C. 1109(a) ................................................................ | 21 |
| 29 U.S.C. 1132(a) (§ 502(a)) ............. | 1, 4, 7, 8, 10, 12, 13, 26 |
| 29 U.S.C. 1132(a)(1)(B) (§ 502(a)(1)(B)) .................. | *passim* |

VI

Statutes and regulations—Continued:                                    Page

      29 U.S.C. 1132(a)(2) (§ 502(a)(2)) ..................................... 6, 21

      29 U.S.C. 1132(a)(3) (§ 502(a)(3)) ....................... 5, 17, 20, 27

      29 U.S.C. 1132(g) .......................................................... 27

      29 U.S.C. 1133 (§ 503) .................................................. 9, 28

      29 U.S.C. 1133(1) ......................................................... 26

      29 U.S.C. 1133(2) (§ 503(2)) .................................. 24, 25, 26

      29 U.S.C. 1136(b) ......................................................... 1

      29 U.S.C. 1144(a) (§ 514(a)) ........................................ 12, 14

      29 U.S.C. 1144(b)(2)(A) ............................................... 12

      29 U.S.C. 1185(a) ......................................................... 26

28 U.S.C. 1441(b) ................................................................ 9-10

Texas Health Care Liability Act, Tex. Civ. Prac. & Rem.
   Code Ann. (West Supp. 2004):

      §§ 88.001 *et seq.* ...................................................... 3

      §  88.001(5) ............................................................ 3

      §  88.002(a) ............................................................ 3

      §  88.002(c) ............................................................ 3

29 C.F.R.:

   Section 2560.503-1(f)(2)(i) ................................................ 28

   Section 2560.503-1(f)(2)(iii)(A) ......................................... 28

   Section 2560.503-1(g)(1) (2000) ......................................... 25

   Section 2560.503-1(g)(1)(i) ............................................... 26, 28

   Section 2560.503-1(h)(1) .................................................. 25, 26

   Section 2560.503-1(h)(2)(iv) .............................................. 26

   Section 2560.503-1(h)(3)(ii) ............................................... 25

   Section 2560.503-1(*i*)(1)(ii) .............................................. 25

   Section 2560.503-1(j)(1) ................................................... 26

   Section 2560.503-1(j)(5)(ii) ............................................... 26

Miscellaneous:

   Gail B. Agrawal & Mark A. Hall, *What If You Could
     See Your HMO? Managed Care Liability Beyond
     the ERISA Shield*, 47 St. Louis U.L.J. 235 (2003) ...... 29, 30

   George G. Bogert & George T. Bogert, *The Law
     of Trusts and Trustees* (rev. 2d ed. 1995) ......................... 28

VII

Miscellaneous—Continued:                                          Page

  66 Fed. Reg. 35,886 (2001) ........................................................    28

  Restatement (Second) of the Law of Trusts (1959) ............    28

  United States General Accounting Office, *Employer-*
    *Based Managed Care Plans: ERISA's Effect on*
    *Remedies for Benefit Denials and Medical Mal-*
    *practice* (July 1998) (GAO/HEHS-98-154) .............    17, 24, 29

# In the Supreme Court of the United States

No. 02-1845

AETNA HEALTH INC., FKA AETNA U.S. HEALTHCARE
INC. AND AETNA U.S. HEALTHCARE OF
NORTH TEXAS INC., PETITIONER

*v.*

JUAN DAVILA

No. 03-83

CIGNA HEALTHCARE OF TEXAS, INC., DBA CIGNA
CORPORATION, PETITIONER

*v.*

RUBY R. CALAD, ET AL.

*ON WRITS OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT*

**BRIEF FOR THE UNITED STATES AS
AMICUS CURIAE SUPPORTING PETITIONERS**

## INTEREST OF THE UNITED STATES

This case concerns the scope of "complete preemption" un-
der Section 502(a) of the Employee Retirement Income
Security Act of 1974 (ERISA), 29 U.S.C. 1132(a), as applied
to state-law claims against a health maintenance organiza-
tion (HMO). Because the Secretary of Labor has primary
authority for enforcing and administering Title I of ERISA,
see 29 U.S.C. 1002(13), 1136(b), which includes Section
502(a), the United States has a substantial interest in

(1)

2

ensuring that ERISA's complete preemption principle is appropriately applied.

## STATEMENT

### 1. *Aetna Health Inc.* v. *Davila*

a. Petitioner Aetna Health Inc.'s predecessors provided HMO coverage to respondent Juan Davila pursuant to an ERISA plan sponsored by Davila's employer. 02-1845 Pet. App. 4a, 67a. The agreement between Aetna and the employer provided that Aetna would contract with participating physicians who were independent contractors and solely responsible for health services rendered to covered patients. *Id.* at 98a. The agreement gave Aetna "complete authority to review all claims for Covered Benefits," including "discretionary authority to determine whether and to what extent eligible individuals and beneficiaries are entitled to coverage and construe any disputed or doubtful terms under th[e] Group Agreement." *Id.* at 102a.

The agreement required benefits to be "[m]edically [n]ecessary" to be covered and specified that "[f]or the purpose of coverage, [Aetna] may determine whether any benefit provided under the [Certificate of Coverage] is [m]edically [n]ecessary." 02-1845 Pet. App. 122a. Among other things, "medically necessary" means that a service or supply "must * * * be no more costly * * * than any equally effective service or supply" in satisfying certain standards of medical efficacy. *Id.* at 122a-123a. The agreement provided that its coverage "does not restrict a Member's ability to receive health care benefits that are not, or might not be, [c]overed [b]enefits." *Id.* at 177a.

b. In April 2000, Davila's primary care physician prescribed Vioxx for Davila's arthritis. 02-1845 Pet. App. 67a, 76a. Aetna refused to pay for the prescription, which led the physician to contact Aetna concerning the refusal. *Id.* at 77a. In May 2000, an Aetna representative informed the physi-

3

cian that, under its formulary policy, Aetna would approve
Vioxx only if Davila "has a diagnosis of osteoarthritis or
acute pain and has a contraindication, intolerance, allergy to
or a documented adequate trial" of at least two other
covered drugs. *Id.* at 80a; see *id.* at 4a, 67a-68a. Davila be-
gan taking one of those other drugs (a generic drug, napro-
syn), which allegedly led to a hospitalization for bleeding
ulcers, a near-heart attack, and internal bleeding. *Id.* at 5a,
68a, 77a.

After his hospitalization, Davila sued Aetna in Texas state
court for violations of the Texas Health Care Liability Act
(THCLA), Tex. Civ. Prac. & Rem. Code Ann. §§ 88.001 *et
seq.* (West Supp. 2004) (reproduced at 02-1485 Pet. App. 56a-
63a). See *id.* at 68a-70a. The THCLA requires a health
insurance carrier, HMO, or other managed care entity "to
exercise ordinary care when making health care treatment
decisions" and imposes liability for damages for harm to an
insured or enrollee proximately caused by its failure to exer-
cise such care. Tex. Civ. Prac. & Rem. Code Ann. § 88.002(a)
(West Supp. 2004). The THCLA defines "[h]ealth care treat-
ment decision" to mean

> a determination made when medical services are actually
> provided by the health care plan and a decision which
> affects the quality of the diagnosis, care, or treatment
> provided to the plan's insureds or enrollees.

*Id.* § 88.001(5). It is a defense to an action asserted against
an insurer, HMO, or other managed care entity that neither
it nor any of its employees or agents "controlled, influenced,
or participated in the health care treatment decision" and
"did not deny or delay payment for any treatment prescribed
or recommended by a provider to the insured or enrollee."
*Id.* § 88.002(c).

Davila alleged that Aetna's adherence to its policies on the
use of Vioxx amounted to a failure to use ordinary care in
making a health care treatment decision that affected the

4

quality of the treatment Davila received. 02-1845 Pet. App. 68a-69a. He further alleged that Aetna was liable for punitive damages because Aetna knew its policy involved a risk of serious injury or death. *Id.* at 70a-71a.

c. Aetna removed the action to federal court based on the "complete preemption" doctrine recognized in *Metropolitan Life Insurance Co.* v. *Taylor*, 481 U.S. 58 (1987). 02-1845 Pet. App. 89a. Under that doctrine, a state-law claim that falls within the scope of the civil enforcement provisions in Section 502(a) of ERISA, 29 U.S.C. 1132(a), is deemed to be a federal claim subject to removal. *Taylor*, 481 U.S. at 65-67. Aetna argued that Davila's state-law claims were within the scope of Section 502(a) because they were based on Aetna's "allegedly wrongful conduct of denying benefits." 02-1845 Pet. App. 87a.

Davila filed a motion to remand the case to state court, which the district court denied. 02-1845 Pet. App. 30a-35a. The district court reasoned that while ERISA would not completely preempt a claim challenging the quality of medical care a participant received, the claim here, "fairly construed, actually challenges the administration of health benefits under an ERISA plan." *Id.* at 33a-34a. Because Davila chose not to refile his state-law claims as ERISA claims, the district court dismissed his state-law claims with prejudice. *Id.* at 34a-35a.

### 2. *CIGNA HealthCare of Texas, Inc.* v. *Calad*

a. Ruby Calad became a member of CIGNA Health-Care's HMO through an ERISA plan provided by her husband's employer. 03-83 Pet. App. 3a, 33a. Under the plan, hospital benefits would not be paid for any day in excess of the number of days certified through a pre-admission certification (PAC) or continued stay review (CSR). CIGNA Opp. Mot. Remand App. 22.

In September 1999, Calad was admitted to a hospital for a hysterectomy. Cause No. 00-09041 Pl. Orig. Pet. para. 4.

5

During pre-authorization procedures, CIGNA allegedly informed her that it authorized only one day of hospitalization following the surgery. 03-83 Pet. App. 34a. On the second day after surgery, a CIGNA representative allegedly informed Calad's treating physician that CIGNA would not extend her hospital stay unless she had hemorrhaging, fever, or high blood pressure; without those symptoms, Calad would have to pay the cost of an extended hospitalization. *Id.* at 34a-35a. Calad was discharged, but she suffered complications that caused her to return to the emergency room a few days later. *Id.* at 3a. Alleging that she did not qualify for a continued hospital stay under CIGNA's medical necessity criteria and was unable to pay for the hospitalization, she sued CIGNA in state court under the THCLA for failing to use ordinary care in its medical decisions. See *id.* at 3a, 30a, 35a.

CIGNA removed the action to federal court under the complete preemption doctrine. See 03-83 Pet. App. 30a-31a. The district court denied Calad's motion to remand and dismissed her state-law claims with prejudice because she chose not to amend her pleading to bring an ERISA claim. *Id.* at 40a.

### 3. *The court of appeals' decision*

The Fifth Circuit consolidated appeals by Davila and Calad and reversed the district courts' refusals to remand their claims to state court. 02-1845 Pet. App. 2a-3a. Removal of the claims by Davila and Calad was improper, the court held, because their claims were not covered by relevant provisions of Section 502(a) authorizing a suit for breach of fiduciary duty or a claim for benefits. *Id.* at 10a-20a.

In particular, the court concluded that respondents' claims were not within Section 502(a)(3) of ERISA, 29 U.S.C. 1132(a)(3), which authorizes suits to enjoin violations of ERISA or the plan or to obtain "other appropriate equitable

6

relief" to redress such violations or enforce ERISA or the plan, because respondents sought damages rather than equitable relief. 02-1845 Pet. App. 10a. The court also concluded that the claims were not within the scope of Section 502(a)(2) of ERISA, 29 U.S.C. 1132(a)(2), which authorizes a plan participant, beneficiary, or fiduciary or the Secretary to obtain "appropriate relief" for the plan against a fiduciary who breaches ERISA duties, because petitioners "were not acting as plan fiduciaries when denying [respondents] medical treatment." 02-1845 Pet. App. 12a.

Finally, the court of appeals concluded that the claims by Davila and Calad did not fall within the scope of Section 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(a)(1)(B), which allows a suit by a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1)(B); see 02-1845 Pet. App. 15a-20a. The court reasoned that Section 502(a)(1)(B) "creates a cause of action for breach of contract," which permits patients to obtain the benefits due "[w]hen a plan administrator incorrectly interprets the plan to deny benefits." *Id.* at 16a. "[B]y contrast," the court held, "[respondents] assert tort claims; they have not sued their ERISA plan administrator, nor do they challenge his interpretation of the plan." *Ibid.*

## SUMMARY OF ARGUMENT

A. The Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et seq.*, "completely preempts" respondents' state-law claims. In *Pilot Life Insurance Co.* v. *Dedeaux*, 481 U.S. 41 (1987), the Court concluded that ERISA's civil enforcement provisions provide an exclusive set of remedies and therefore preempt state-law claims that fall within the scope of those provisions. In *Metropolitan Life Insurance Co.* v. *Taylor*, 481 U.S. 58 (1987), decided the same day as *Pilot Life*, the Court held that such state-law

7

claims are "completely preempted"—*i.e.*, are removable from state to federal court as a jurisdictional matter and preempted by federal law on the merits. "Complete preemption" reflects a Congressional intent for Section 502(a) to provide the exclusive remedies for claims that fall within the scope of that section.

B. Respondents' state-law claims are completely preempted because they fall within the scope of Section 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(a)(1)(B). That provision affords plan participants and beneficiaries a cause of action to obtain benefits or enforce rights under an ERISA plan. The state-law claims in these cases clearly attempt to enforce rights under an ERISA plan, because petitioners' liability is dependent on a showing that respondents were entitled to have petitioners pay for benefits under the plans. Because respondents' state-law claims thus fall within the scope of Section 502(a)(1)(B) of ERISA, they are subject to complete preemption, and the federal courts accordingly had removal jurisdiction over these cases.

C. The court of appeals held that respondents' claims are not completely preempted because they sound in tort, while Section 502(a)(1)(B), in the court's view, creates a cause of action for breach of contract. That distinction is untenable; this Court has repeatedly held—in *Pilot Life*, in *Taylor*, and in *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133 (1990)—that tort-based claims are preempted or completely preempted by ERISA's civil enforcement provisions in Section 502(a). The Court has never suggested that preemption under Section 502(a) depends on the categorization of a claim as contract-based or tort-based. To the contrary, the Court has stated that Section 502(a) provides exclusive remedies; the fact that a plaintiff seeks tort-type remedies or other remedies not authorized in Section 502(a) only reinforces the conclusion that the plaintiff's claim is preempted or completely preempted. Although the court of appeals purported

8

to find support for its view in *Rush Prudential HMO, Inc.* v. *Moran,* 536 U.S. 355 (2002), that case supports and reaffirms the conclusion that state-law claims seeking remedies not authorized by Section 502(a) of ERISA are preempted under the principles of *Pilot Life, Taylor,* and *Ingersoll-Rand.*

D. *Pegram* v. *Herdrich,* 530 U.S. 211 (2000), does not alter that conclusion. In *Pegram,* the Court held that an HMO physician, who was both treating the patient and deciding whether treatment was covered by a plan, was not acting as an ERISA fiduciary when she made a "mixed" eligibility and treatment decision. *Pegram's* conclusion about the existence of a fiduciary duty under ERISA, however, has little to do with whether respondents' claims fall within the scope of a Section 502(a)(1)(B) claim for benefits. Moreover, *Pegram's* holding that a physician making a medical necessity determination is not an ERISA fiduciary is properly limited to cases, such as *Pegram* itself, in which the physician is a treating physician serving simultaneously in a medical-treatment and benefits-determination role. ERISA and the governing regulations of the Secretary of Labor make clear that where, as here, the HMO and its representatives are not treating the patient but are making benefits determinations under an ERISA plan, they may serve in an ERISA fiduciary capacity.

E. ERISA is designed to provide participants and beneficiaries with the benefits promised by their plans and other appropriate equitable relief. While the remedies available under Section 502(a) of ERISA are not as broad as the tort remedies and punitive damages sought by respondents, ERISA's civil enforcement scheme—which the complete preemption doctrine makes exclusive—nonetheless effectuates the congressional balance between providing prompt and appropriate remedies for claimants and encouraging the formation and growth of employee benefit plans. The ERISA regime protects claimants and permits remedies

9

that are effective for most claimants, including an injunction ordering an HMO to pay for proposed treatment before it is provided, appropriate equitable relief to redress violations of ERISA or an ERISA plan, important procedural protections under the recently revised claims regulations promulgated by the Department of Labor pursuant to Section 503 of the Act, 29 U.S.C. 1133, independent review of HMO medical-necessity decisions if state law so provides, and a possible state-court suit against a treating physician for malpractice and against an HMO when it is vicariously liable for a treating physician's decisions.  Permitting state-law damage actions concerning what are at bottom coverage disputes in addition to those protections and remedies under ERISA itself would undermine the exclusivity of the remedies ERISA does provide.  It would also undermine the uniform administration of plans operating in more than one State Moreover, by increasing costs through awards of or expo-sure to punitive damages and other state-law remedies in ways that cannot readily be predicted or budgeted, allow-ance of state-law damage actions against HMOs or other in-surers for an allegedly wrongful denial of a claim for benefits could frustrate ERISA's goal of promoting the interests of employees in having their employers provide and maintain adequate health plans.

## ARGUMENT

## ERISA COMPLETELY PREEMPTS RESPONDENTS' STATE-LAW CLAIMS BECAUSE THEY FALL WITHIN THE SCOPE OF SECTION 502(a)

### A.  State-Law Claims Within The Scope Of Section 502(a) Are Removable From State To Federal Court

1.  Under 28 U.S.C. 1441(b), "[a] civil action filed in a state court may be removed to federal court if the claim is one 'arising under' federal law." *Beneficial Nat'l Bank* v. *Anderson*, 123 S. Ct. 2058, 2062 (2003).  Ordinarily, Section

10

1441(b) authorizes removal only when the federal question appears on the face of a well-pleaded complaint, but not when preemption is simply raised as a federal defense to a plaintiff's suit. *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 63 (1987). But certain statutes so completely occupy an area Congress has chosen to regulate exclusively as federal law, with a federal cause of action, "that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63-64. With respect to those statutes, a claim that on its face raises only state-law claims but that also falls within the scope of the federal cause of action will be considered to raise the federal claim. See, *e.g.*, *Beneficial Nat'l Bank*, 123 S. Ct. at 2063; *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 393 (1987); *Taylor*, 481 U.S. at 65.

2. ERISA's enforcement provisions have such a "complete preemption" effect. That conclusion follows from two basic premises. The first premise, established by *Pilot Life Insurance Co.* v. *Dedeaux*, 481 U.S. 41 (1987), is that ERISA's civil enforcement provisions—and, in particular, Section 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(a)(1)(B)—provide an exclusive remedy; they therefore preempt any state-law claims that fall within their scope. The second premise, established by this Court's decision the same day in *Taylor*, is that the preemptive force of ERISA's civil enforcement provisions gives rise to complete preemption, and thus federal removal jurisdiction over claims that are pleaded under state law but that fall within the scope of Section 502(a).

a. In *Pilot Life*, an ERISA plan participant unsuccessfully sought disability benefits from the ERISA plan's insurer for a back injury at work. 481 U.S. at 43. The participant brought state-law tort and contract claims against the insurer in state court, seeking compensatory and punitive damages for the failure to provide benefits. *Id.* at 43-44.

11

This Court held that suits "asserting improper processing of claims under ERISA-regulated plans [are to] be treated as federal questions governed by § 502(a)" of ERISA, and are preempted. *Id.* at 56.

The Court's conclusion in *Pilot Life* was based largely on its determination that "ERISA's civil enforcement remedies were intended to be exclusive." 481 U.S. at 54. ERISA's civil enforcement scheme was carefully crafted by Congress, balancing "the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Ibid.* The Court concluded that "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Ibid.* See also *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 145 (1990) (state-law cause of action preempted because it "purports to provide a remedy for the violation of a right * * * exclusively enforced by § 502(a)[3]").

b. *Taylor* was decided the same day as *Pilot Life.* As in *Pilot Life*, an ERISA plan participant sought disability benefits for a back injury he had suffered at work. 481 U.S. at 61. As in *Pilot Life*, the insurer of the ERISA plan found that the plaintiff was not disabled and therefore not eligible for benefits. *Ibid.* Unlike in *Pilot Life*, the plaintiff brought suit in *state* court, asserting state-law "contract and tort" claims, *id.* at 62, and seeking both the disability benefits that he believed had been wrongfully denied and damages for his "mental anguish." *Ibid.* The insurer removed the case to federal court.

This Court held that "this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress," and that it was accordingly "removable to federal court by the defen-

12

dants" under the complete preemption doctrine. *Taylor*, 481
U.S. at 67. The Court noted that its companion decision in
*Pilot Life* held that "state common law causes of action
asserting improper processing of a claim for benefits under
an employee benefit plan regulated by [ERISA] are pre-
empted by the Act." *Id.* at 60. Although a mere preemption
defense is not ordinarily a sufficient basis for removal juris-
diction, the Court explained that Congress had "clearly
manifested an intent to make causes of action within the
scope of the civil enforcement provisions of § 502(a) remov-
able to federal court." *Id.* at 66. Accordingly, the Court held
that it was appropriate "to recharacterize a state law
complaint displaced by § 502(a)(1)(B) as an action arising
under federal law." *Id.* at 64.[1]

### B. Respondents' Claims Fall Within The Scope Of Section 502(a)(1)(B)

1. *Pilot Life* and *Taylor* establish that claims that fall
within the scope of Section 502(a)(1)(B) are subject to com-
plete preemption. In each of those cases, the plaintiffs could
not have been successful on their contract and tort claims
unless they could show that they were in fact entitled to
have the defendants pay for benefits under their ERISA
plans. In *Pilot Life*, for example, the plaintiff sought, *inter*

---

[1] In contrast to "complete preemption" of state causes of action that
fall within the scope of Section 502(a) under *Taylor*, "ordinary" pre-
emption of state law under Section 514(a) of ERISA, 29 U.S.C. 1144(a),
does not by itself permit removal of a state-court action to federal court.
*Taylor*, 481 U.S. at 64; *Franchise Tax Bd.* v. *Construction Laborers Vaca-
tion Trust*, 463 U.S. 1 (1983). A state law may be saved from "ordinary"
preemption under ERISA's insurance saving clause, see 29 U.S.C.
1144(b)(2)(A), even in a case in which the underlying claim is removable
from state to federal court under the complete preemption doctrine. That
would occur, for example, if the state law's sole effect is to add a
mandatory plan term that is enforceable only through an ERISA Section
502(a) action. See *Rush Prudential HMO, Inc.* v. *Moran*, 536 U.S. 355,
379-380 (2002); see also *UNUM Life Ins. Co.* v. *Ward*, 526 U.S. 358, 376-
377 (1999).

13

*alia,* "[d]amages for failure to provide benefits under the insurance policy." 481 U.S. at 43. In *Taylor,* the plaintiff sought, *inter alia,* "compensatory damages for money contractually owed Plaintiff." 481 U.S. at 61. In both cases, the plaintiffs' claims obviously could not have been successful if it were ultimately determined that they were not entitled to the benefits at issue.

Because the plaintiffs in *Pilot Life* and *Taylor* brought claims that depended on a showing that they were entitled to have the defendants pay for benefits under their ERISA plans, the Court had no difficulty in concluding in each case that the plaintiff's claims fell within the scope of Section 502(a)(1)(B). Indeed, the showing of entitlement to payment that plaintiffs had to make in *Pilot Life* and *Taylor* was essentially the same showing that would have been required for them to bring a successful suit under Section 502(a)(1)(B), which creates a cause of action "to recover benefits due [a participant] under the terms of his plan" or "to enforce his rights under the terms of the plan." 29 U.S.C. 1132(a)(1)(B). Accordingly, the state-law claims in those cases were squarely preempted.

2. Just as in *Pilot Life* and *Taylor,* respondents' claims fall within the scope of Section 502(a)(1)(B) because they require adjudication of respondents' entitlement to have petitioners pay for benefits under their ERISA plans. They also seek remedies additional to those provided under Section 502(a)(1)(B). They are therefore completely preempted.[2]

a. Respondent Davila's state-law action alleges that Aetna, through its prescription drug formulary policies, "controlled, influenced, participated in and made decisions

---

[2] Because the state-law claims in these cases depend on a showing that respondents were entitled to benefits under their ERISA plans, these cases do not present the question whether a state-law claim that does not require adjudication of rights under an ERISA plan may nonetheless fall within the scope of Section 502(a) and therefore be completely preempted.

14

which affected the quality of the diagnosis, care, and treatment provided to" him; that Aetna thereby "violat[ed] the duty of ordinary care" set forth in Texas law; and that "[s]uch violation of ordinary care was the proximate cause of [Davila's] damages." 02-1845 Pet. App. 69a. In particular, Davila alleges that Aetna did not exercise due care when it concluded that he could not obtain Vioxx under the plan unless and until he had first tried other medications to treat his condition. *Id.* at 67a-69a.

As was true of the claims in *Pilot Life* and *Taylor*, Davila's state-law claim necessarily requires adjudication of Davila's right to obtain payment for Vioxx under his ERISA plan. Specifically, Davila's claim requires a showing that Davila was entitled to payment for Vioxx either under the literal terms of the plan or under any provision of law incorporated into the plan—*i.e.*, any federal law applicable to the plan or any state law applicable to the plan that is not preempted (or saved from preemption) under Section 514(a). If he was not so entitled, then Aetna's failure to pay for the drug was both justified and not the proximate cause of any injuries Davila suffered. In other words, Davila's state-law claim depends on the showing that would have been necessary under Section 502(a)(1)(B) of ERISA "to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan." 29 U.S.C. 1132(a)(1)(B).

Under the principles of *Pilot Life* and *Taylor*, claims like Davila's that require a showing that the claimant could have recovered on a Section 502(a)(1)(B) claim are subject to complete preemption under ERISA. That is more, not less, clear when such state-law claims involve remedies not available under Section 502(a)(1)(B). Although Davila has purported to plead his claim under an alternative state-law cause of action that provides for remedies in addition to those available under ERISA, his claim nonetheless "is in

15

reality based on federal law" and is therefore completely preempted. *Beneficial Nat'l Bank*, 123 S. Ct. at 2063.

b. Similarly, Calad's claim in No. 03-83 is completely preempted. The basis for her state-law complaint is an asserted right under her ERISA plan to obtain what she viewed as medically necessary treatment—in her case, more than one day of hospitalization after a hysterectomy, as recommended by her treating physician. Calad alleged that CIGNA interfered with that right by informing Calad and her treating physician that CIGNA would not pay for an extended hospital stay because she did not qualify under CIGNA's medical necessity criteria for extended hospital coverage. 03-83 Pet. App. 34a-35a. If Calad did not have a legal right under her ERISA plan to payment for a medically necessary additional period in the hospital, then her state-law claim would fail. Accordingly, her state-law claim, like Davila's, depends on a showing that she was entitled to payment under her ERISA plan for the additional medical treatment she sought. It follows that Calad's complaint, like Davila's, is subject to removal under the complete preemption doctrine.

c. These cases differ from *Pilot Life* and *Taylor* in that the benefits involved here are health care benefits, rather than disability benefits, and the defendants here are HMOs, rather than traditional insurers. Those facts, however, have no bearing on the analysis. Congress "expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants * * * asserting improper processing of a claim for benefits, and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress." *Pilot Life*, 481 U.S. at 52; see *Taylor*, 481 U.S. 63. That rationale applies regardless of whether the defendant is a traditional insurer making a post-treatment coverage decision under a fee-for-services plan (as in *Pilot Life* and *Taylor*) or an HMO making a pre-certifica-

16

tion coverage decision (as here), and regardless of whether the claims involve disability benefits (as in *Pilot Life* and *Taylor*) or medical benefits (as here). Accordingly, the rationale of *Pilot Life* and *Taylor* applies here, and respondents' claims are completely preempted.[3]

3. If any doubt remained as to whether respondents' state law claims fall within the scope of Section 502(a)(1)(B) of ERISA, the ability of claimants who are similarly situated to respondents to sue under ERISA confirms that respondents' claims are completely preempted. As the Third Circuit noted in holding that ERISA completely preempted a state-law claim against an HMO for denying treatment by an out-of-network provider, "[t]here have been numerous cases in which [federal] courts have issued preliminary injunctions under similar circumstances." *Pryzbowski* v. *U.S. Healthcare, Inc.*, 245 F.3d 266, 274 (3d Cir. 2001).[4] There are also

---

[3] By requiring that claims challenging HMO coverage decisions be brought under Section 502(a)(1)(B), the complete preemption doctrine ensures that ERISA standards—including the federal common law that Congress expected would apply to benefit claims, see *Pilot Life*, 481 U.S. at 56—will continue to apply to HMO coverage decisions in the same way they apply to coverage decisions by traditional insurers, such as Blue Cross and Blue Shield, and companies that administer self-insured plans. See, *e.g.*, *Kopicki* v. *Fitzgerald Auto. Family Employee Benefits Plan*, 121 F. Supp. 2d 467, 470 (D. Md. 2000) (pre-treatment coverage decision by company administering self-insured plan); *Kekis* v. *Blue Cross & Blue Shield of Utica-Watertown, Inc.*, 815 F. Supp. 571, 573-576 (N.D.N.Y. 1993) (pre-treatment coverage decision by Blue Cross/Blue Shield).

[4] See, *e.g.*, *Heasley* v. *Belden & Blake Corp.*, 2 F.3d 1249, 1253 (3d Cir. 1993) (participant's challenge to administrator's decision not to pre-authorize liver transplant); *Kopicki* v. *Fitzgerald Auto. Family Employee Benefits Plan*, 121 F. Supp. 2d at 470-471 (beneficiary's challenge to administrator's decision not to pre-authorize stem cell treatment for cancer); *Marro* v. *K-III Communications Corp.*, 943 F. Supp. 247, 248-249 (E.D.N.Y. 1996) (similar); *Mattive* v. *Healthsource of Savannah, Inc.*, 893 F. Supp. 1559, 1562-1563 (S.D. Ga. 1995) (similar); *Kekis*, 815 F. Supp. at 576-577 (similar); *Wilson* v. *Group Hospitalization & Med. Servs., Inc.*, 791 F. Supp. 309, 310 (D.D.C. 1992) (similar), appeal dismissed, 995 F.2d 306 (D.C. Cir. 1993); *Kulakowski* v. *Rochester Hosp. Serv. Corp.*, 779 F. Supp.

17

cases in which a claimant obtains treatment recommended by a treating physician despite a refusal by a managed care entity to pay for it, and later challenges the HMO's denial of benefits under ERISA. See, *e.g.*, *Shannon* v. *Jack Eckerd Corp.*, 113 F.3d 208, 209 (11th Cir. 1997), cert. denied, 522 U.S. 1111 (1998); United States General Accounting Office, *Employer-Based Managed Care Plans: ERISA's Effect on Remedies for Benefit Denials and Medical Malpractice* 12 (July 1998) (GAO/HEHS-98-154) (*GAO Report*) ("A health plan's decision to deny coverage does not preclude the attending physician from providing treatment—if the patient can obtain other funding to pay for it."); 02-1845 Pet. App. 177a; 03-83 Pet. App. 34a-35a. The fact that Section 502(a)(1)(B) provides remedies for the precise types of wrongs respondents allege confirms that respondents' state-law claims fall within the scope of that provision and are therefore completely preempted.[5]

## C. The Fact That Plaintiffs' Actions Are Tort-Based Underscores Their Complete Preemption

1. The court of appeals held that respondents' claims are not completely preempted—indeed, are not preempted at all —because the fact that they are tort-based makes their "claims of HMO medical malpractice differ fundamentally

---

710, 711-712 (W.D.N.Y. 1991) (similar); *White* v. *Caterpillar, Inc.*, 765 F. Supp. 1418, 1419-1420 (W.D. Mo.) (similar), aff'd, 985 F.2d 564 (8th Cir. 1991).

[5] If, contrary to our argument, respondents' state-court actions fell outside the scope of Section 502(a)(1)(B), they may nevertheless be completely preempted because they would fall within the scope of Section 502(a)(3) of ERISA, 29 U.S.C. 1132(a)(3). Section 502(a)(3) allows a participant or beneficiary to sue to enjoin a violation of ERISA or of the plan, or to obtain "other appropriate equitable relief" to redress such a violation or to enforce any provisions of ERISA or the plan. 29 U.S.C. 1132(a)(3). Section 502(a)(3) thus allows participants and beneficiaries to obtain individual relief for a breach of a fiduciary obligation. *Varity Corp.* v. *Howe*, 516 U.S. 489, 507-515 (1996). See also note 13, *infra*.

18

from * * * § 502(a)(1)(B) claims." 02-1845 Pet. App. 16a. The court reasoned that "Section 502(a)(1)(B) * * * creates a cause of action for breach of contract," while respondents "assert tort claims." *Ibid.* The court went on to emphasize the remedies sought and noted that "Calad is not requesting the value of an extra night at the hospital, and Davila is not requesting reimbursement for the more expensive drug the HMO denied." *Id.* at 17a. Because respondents "are not seeking reimbursement for benefits denied them," *ibid.*, the court concluded that their claims are not preempted or completely preempted by Section 502(a)(1)(B).

The court's conclusion is inconsistent with *Pilot Life, Taylor,* and *Ingersoll-Rand,* each of which involved claims that were directly pleaded as tort or tort-like claims and each of which involved claims for damages that extended beyond the benefits or rights due.[6] In each of those cases, the Court held that the plaintiff's claims were preempted, and nothing in the Court's analysis or result suggested that the label placed upon the plaintiff's claim in those cases— whether contract, tort, or some mixture of the two—had any relevance at all to the question. "Any other result would elevate form over substance and allow parties to evade the requirements of [the federal statute] by relabeling their contract claims as claims for tortious breach of contract."

---

[6] See *Pilot Life,* 481 U.S. at 43 (plaintiff pled claims for "Tortious Breach of Contract," "Breach of Fiduciary Duties," and "Fraud in the Inducement," and sought compensatory and punitive damages); *Taylor,* 481 U.S. at 61, 62 (noting that plaintiff sought "compensation for mental anguish caused by breach of * * * contract" and holding that plaintiff's "common law contract and tort claims are pre-empted by ERISA"); *Ingersoll-Rand,* 498 U.S. at 136 (Plaintiff "sought compensatory and punitive damages under various tort and contract theories."); see also *Rush,* 536 U.S. at 377 ("In *Pilot Life,* an ERISA plan participant who had been denied benefits sued in a state court on state tort and contract claims."); *id.* at 379 (noting that in *Ingersoll-Rand,* the court "had no trouble finding that Texas's tort of wrongful discharge * * * conflicted with ERISA enforcement").

19

*Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211 (1985) (holding that complete preemption under Section 301 of the LMRA, which provides for enforcement of contract rights under a collective bargaining agreement, applies to state-law tort claims). Indeed, the fact that the state-law claims provide additional tort-based remedies rather than merely duplicating the remedies typically available under Section 502(a)(1)(B) only underscores the rationale for finding those claims preempted. Although the labels placed on the plaintiffs' claims in *Pilot Life* and subsequent cases thus had no significance, the fact that the plaintiffs in those cases sought tort-like remedies that extended beyond those authorized in Section 502(a)(1)(B) was at the heart of the Court's conclusion that the claims conflicted with Congress's tailoring of remedies in ERISA and therefore were preempted or completely preempted.

2. The court of appeals recognized that *Pilot Life* "includes some expansive language" that "arguably supports" complete preemption, 02-1845 Pet. App. 19a, but the court believed that this Court's more recent decision in *Rush Prudential HMO, Inc.* v. *Moran*, 536 U.S. 355 (2002), "indicates that *Pilot Life* does not sweep so broadly." As support for that contention, the court of appeals noted that this Court in *Rush* had characterized *Ingersoll-Rand* as a case in which the "state law duplicated the elements of a claim available under ERISA" and had stated that the state law thus "converted the remedy from an equitable one under § 1132(a)(3) * * * into a legal one for money damages." 02-1845 Pet. App. 19a-20a (quoting *Rush*, 536 U.S. at 379). In the court of appeals' view, that reference in *Rush* generated a rule that "the test employed for 'complete preemption'" is that "States may not duplicate the causes of action listed in ERISA § 502(a)." *Id.* at 20a.

The court of appeals' reasoning is faulty. Nothing in *Rush* suggests that complete preemption is *limited* to such cases

20

of "duplication." And in any event, the sense in which the claim in *Ingersoll-Rand* "duplicated" the ERISA cause of action is identical to the sense in which the claims in *Pilot Life*, *Taylor*, and this case do. As explained above, the plaintiff's claim in each case "duplicate[s]" an ERISA claim because it cannot succeed without essentially proving the elements of an ERISA claim. The fact that the plaintiffs in *Ingersoll-Rand* and other cases prior to *Rush* might have had to prove *additional* facts or elements beyond those required by Section 502(a)(1)(B) or Section 502(a)(3) to obtain the additional forms of recovery they sought under state law did not prevent preemption of the state-law claims. It is typically true that a plaintiff seeking to recover compensatory or punitive damages must prove facts beyond those necessary to establish a violation of a substantive duty by the defendant. That aspect of the cases therefore was of no significance. What was significant was that, with respect to claims that required proof of the essential elements of an ERISA claim, state law provided for remedies beyond those available under ERISA, thus making the preemption of the state law particularly clear. See *Pilot Life*, 481 U.S. at 54-57; *Taylor*, 481 U.S. at 63, 64-65; *Ingersoll-Rand*, 498 U.S. at 144-145. Similarly here, the fact that respondents would have to prove additional facts or elements to obtain the compensatory and punitive damages they seek—remedies not available under Section 502(a)(1)(B)—does not prevent preemption of their state-law claims.

Far from casting doubt on those earlier precedents, this Court's decision in *Rush* relied upon and reinforced them. The Court emphasized that the state statute providing for independent review of HMO medical necessity determinations in that case "provides no new cause of action under state law and authorizes no new form of ultimate relief." 536 U.S. at 379. Because "the relief ultimately available [after the independent review] would still be what ERISA author-

izes in a suit for benefits under § 1132(a)," the Court explained that *Rush* "does not involve the sort of additional claim or remedy exemplified in *Pilot Life* [and] *Ingersoll-Rand*." *Id.* at 380. On that basis, the Court held that the state-law independent-review scheme did not fall within *Pilot Life*'s rule of categorical preemption. *Ibid.* In this case, by contrast, respondents plainly do seek remedies beyond those provided by Section 502(a)(1)(B). Accordingly, the Court's reasoning in *Rush* supports and reaffirms the conclusion that under *Pilot Life*, *Taylor*, and *Ingersoll-Rand*, respondents' claims are completely preempted.

### D. *Pegram* v. *Herdrich* Does Not Bar Complete Preemption Of Respondents' Claims

The court of appeals suggested briefly that this Court's concern in *Pegram* v. *Herdrich*, 530 U.S. 211 (2000), that "ERISA should not be interpreted to preempt state malpractice laws or to create a federal common law of medical malpractice" supports its conclusion that the state-law claims in this case are not completely preempted. 02-1845 Pet. App. 20a; see also *Cicio* v. *Does*, 321 F.3d 83, 100-104 (2d Cir. 2003), petition for cert. filed, No. 03-69 (July 11, 2003). That suggestion is mistaken.[7]

1. In *Pegram*, an ERISA plan participant contended that an HMO had violated its fiduciary duties under ERISA by structuring its operations so that its physician-owners re-

---

[7] The court of appeals relied more extensively on *Pegram* for its conclusion that the claims here are not preempted by Section 502(a)(2) of ERISA, 29 U.S.C. 1132(a)(2). 02-1845 Pet. App. 12a-15a. That provision does not preempt respondents' actions for reasons independent of *Pegram*. Section 502(a)(2) allows a participant or beneficiary to sue a fiduciary for "appropriate relief" under Section 409 of ERISA, 29 U.S.C. 1109, including "removal of [a breaching] fiduciary," 29 U.S.C. 1109(a). Section 502(a)(2), however, provides relief to the plan, rather than to individuals. *Massachusetts Mut. Life Ins. Co.* v. *Russell*, 473 U.S. 134, 140 (1985). Because the claimants here seek only individual relief, their claims do not fall within the scope of Section 502(a)(2).

22

ceived greater profits if they held down the HMO's medical treatment expenses. The plaintiff alleged that the plan's physicians acted in a fiduciary capacity when they made "mixed eligibility and treatment decisions," 530 U.S. at 229 —decisions that mix questions concerning "the plan's coverage of a particular condition or medical procedure for its treatment" with "choices about how to go about diagnosing and treating a patient's condition," *id.* at 228. This Court held that "mixed eligibility [and treatment] decisions by HMO physicians are not fiduciary decisions" that are subject to suit under Section 502(a)(2) for breach of a fiduciary duty under ERISA. *Id.* at 237.

2. *Pegram* is inapposite here. Even if HMO coverage decisions by a *non*-treating physician were "mixed" eligibility and treatment decisions under *Pegram* (but see pp. 23-25, *infra)*, there would be no reason for the Court to read *Pegram* to foreclose complete preemption of respondents' state-law claims. The Court in *Pegram* stated that it was not addressing preemption issues. See 530 U.S. at 229 n.9. Moreover, this case does not turn on whether any particular decision was or was not a fiduciary decision under ERISA. It does not matter in this case whether the HMO representatives who decided not to pay for respondents' requested medical treatment made a fiduciary decision under ERISA or a "mixed" eligibility and treatment decision that was not a fiduciary act under *Pegram*. In either event, the state-law actions brought by respondents fall within the scope of Section 502(a)(1)(B) and seek to add to ERISA's remedies by permitting a plan participant to recover damages, including punitive damages, for a denial of benefits. A wrongful denial of benefits is actionable under Section 502(a)(1)(B) regardless of whether it constitutes a fiduciary breach. Accordingly, those state-law actions fall within the scope of Section 502(a)(1)(B), and are removable to federal court, regardless

23

of the fiduciary or non-fiduciary nature of the decisions attacked by respondents.

3. In any event, as the government pointed out in its brief as amicus curiae in *Rush*, *Pegram*'s holding that "mixed eligibility [and treatment] decisions by HMO physicians are not fiduciary decisions" under ERISA, 530 U.S. at 237, should not be extended beyond decisions made by treating physicians who are also making HMO eligibility decisions. See U.S. Br. at 7-11, *Rush*, *supra* (No. 00-1021). Although some statements in *Pegram*, if read in isolation, might suggest a broader application of the "non-fiduciary" rule, the better reading of *Pegram* is that it addresses only mixed decisions made by treating physicians.[8]

That limitation of *Pegram* to treating physicians serving dual roles makes sense. When the same doctor decides both treatment and eligibility questions, as may occur in a staff-model HMO, the treatment decision truly is "practically inextricable" from the eligibility decision. In HMOs such as those in this case, however, the treatment and coverage questions are separate, with a contract physician deciding the appropriate treatment and the HMO independently deciding whether to pay for it. The coverage decision may, as in *Pegram*, turn on a determination of medical necessity, but

---

[8] The plaintiff's claim in *Pegram* grew out of a decision made by her treating physician, see 530 U.S. at 215, 217, 231, and there is no indication that she then sought review through the plan's appeal process. Furthermore, although the Court in *Pegram* did not regard the plaintiff's claim of fiduciary breach as limited to a single incident of poor treatment, see *id*. at 226, the Court did appear to view her claim as involving only an attack on the compensation policies as they affected treating physicians. See, *e.g.*, *id*. at 228 (noting that treatment and eligibility decisions are "practically inextricable from one another * * * not merely because" they are "made by the same person, the *treating physician*," but also "because a great many * * * coverage questions are not simple yes-or-no questions") (emphasis added); *id*. at 232 ("physicians through whom HMOs act make just the sorts of decisions made by licensed medical practitioners millions of times every day").

24

in the end it is a decision on whether the HMO will pay
under the terms of the plan, not whether the physician may
provide the recommended treatment anyway (with some
other source of funds) outside the plan. See *GAO Report* 12
(a health plan's decision to deny coverage does not preclude
the attending physician from providing treatment if the
patient can pay for it). Under the *Pegram* categorization,
therefore, the HMO's decision is an "eligibility" determina-
tion that is subject to ERISA fiduciary duty standards, not a
"mixed" decision outside those standards.

*Pegram* also must be read against the background of pro-
visions of ERISA itself and longstanding Labor Department
regulations and interpretations that provide that plan ad-
ministrators who make coverage decisions on review of the
denials of claims for benefits *are* plan fiduciaries. Whatever
else HMOs do to provide health care to the participants and
beneficiaries of an ERISA plan they service, acting as the
entity that determines eligibility for plan benefits in a given
case is at the core of what HMOs do.[9]  ERISA makes clear
that an entity responsible for that determination must be an
ERISA fiduciary. See 29 U.S.C. 1002(21)(A)(iii) (a fiduciary
includes a person to the extent "he has any discretionary
authority or discretionary responsibility in the administra-
tion of such plan"); *Varity Corp.*, 516 U.S. at 511 ("a plan

---

[9]  See *Pegram*, 530 U.S. at 219 (citations omitted):

At the least, HMOs, like traditional insurers, will in some fashion
make coverage determinations, scrutinizing requested services
against the contractual provisions to make sure that a request for
care falls within the scope of covered circumstances (pregnancy, for
example), or that a given treatment falls within the scope of the care
promised (surgery, for instance).  They customarily issue general
guidelines for their physicians about appropriate levels of care.  * * *
And they commonly require utilization review (in which specific treat-
ment decisions are reviewed by a decisionmaker other than the
treating physician) and approval in advance (precertification) for
many types of care, keyed to standards of medical necessity or the
reasonableness of the proposed treatment.

administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents"); accord *id.* at 530 (Thomas, J., dissenting).[10]  Construing *Pegram* to mean that HMO representatives are not ERISA fiduciaries when they decide on behalf of the plan whether to pay for treatment that a primary care physician recommends would thus conflict with the statutory and administrative framework for claims adjudication generally.

### E. Complete Preemption Effectuates The Congressional Balance Between Providing Prompt And Appropriate Remedies For Claimants And Encouraging The Formation And Growth of Employee Benefit Plans

ERISA does not provide the full range of remedies available under state tort law and does not provide at all for punitive damages.  In some circumstances, moreover, a denial of coverage by an HMO may result in a denial of treatment—if time constraints effectively preclude a suit for injunctive relief under ERISA and the claimant cannot afford to pay for treatment from other funds and then later seek recovery from the HMO.  Those features of ERISA's enforcement scheme, however, do not mean that this Court should refuse to apply the complete preemption doctrine to HMO coverage decisions that may in turn have an effect on a claimant's

---

[10] See also 29 U.S.C. 1133(2) ("[i]n accordance with regulations of the Secretary [of Labor], every employee benefit plan shall * * * afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review *by the appropriate named fiduciary* of the decision denying the claim") (emphasis added). Section 503(2) also requires ERISA plans to decide claims "[i]n accordance with regulations of the Secretary." 29 U.S.C. 1133(2). The Secretary has made clear that claimants must have an opportunity to appeal "an adverse benefit determination *to an appropriate named fiduciary*." 29 C.F.R. 2560.503-1(h)(1) (emphasis added); see also 29 C.F.R. 2560.503-1(h)(3)(ii) and (i)(1)(ii)); 29 C.F.R. 2560.503-1(g)(1) (2000) (superseded regulation, requiring appeal to fiduciary or person designated by the fiduciary).

26

ability to obtain medical treatment.    Such a refusal would upset the balance reflected in ERISA's civil enforcement provisions between providing prompt and appropriate remedies for claimants and encouraging the formation and growth of employee benefit plans.

1.  In enacting ERISA, Congress intended generally to promote the interests of participants and beneficiaries in employee benefit plans, 29 U.S.C. 1001(b), but Congress stopped short of requiring employers to establish such plans. *Lockheed Corp.* v. *Spink*, 517 U.S. 882, 887 (1996).  Congress also did not require employers that offer plans to "provide any particular benefits." *Shaw* v. *Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983).[11]  Accordingly, the "'comprehensive civil enforcement scheme'" in Section 502(a) of ERISA, 29 U.S.C. 1132(a), "represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Ingersoll-Rand,* 498 U.S. at 144 (quoting *Pilot Life,* 481 U.S. at 54).

The balance Congress struck provides effective remedies for most claimants who promptly and properly seek them.[12]

---

[11] One of the very few exceptions is 29 U.S.C. 1185(a), which requires group health plans and health insurance issuers to provide at least 48 hours of hospitalization after childbirth, if they offer maternity benefits. ERISA does not require minimum periods of hospitalization for other benefits a plan chooses to provide, such as coverage for respondent Calad's hysterectomy.

[12] HMOs must provide claimants with "full and fair review" of a denial of a claim for benefits. 29 U.S.C. 1133(2); 29 C.F.R. 2560.503-1(h)(1). Such review must "take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. 2560.503-1(h)(2)(iv). The plan administrator's decision must also provide the "specific reasons" for any adverse determination (29 U.S.C. 1133(1); 29 C.F.R. 2560.503-1(g)(1)(i) and (j)(1)), and the claimant must be furnished, or afforded the right to obtain, an "explanation of the scientific or clinical judgment" for certain determinations by group health and disability plans. 29 C.F.R. 2560.503-1(j)(5)(ii). See generally U.S. Amicus Br.

27

First, under Section 502(a)(1)(B), Congress has allowed claimants to sue not just for benefits that are due, but also to enforce their rights under the plan and clarify rights to future benefits. 29 U.S.C. 1132(a)(1)(B). Thus, a claimant may bring an action under Section 502(a)(1)(B) to challenge a pre-treatment denial of coverage by asking a court to order a managed care company (or other entity that administers a health plan) to pay for proposed treatment. See note 4, *supra*. Successful claimants may be awarded attorneys' fees. See 29 U.S.C. 1132(g). District courts have been able to act quickly to provide relief to such claimants when necessary. See, *e.g.*, *Wilson* v. *Group Hospitalization & Med. Servs., Inc.*, 791 F. Supp. 309, 310 (D.D.C. 1992) (April 13, 1992 temporary restraining order prevented insurer from refusing to pay for April 14, 1992 treatment), appeal dismissed, 995 F.2d 306 (D.C. Cir. 1993); *White* v. *Caterpillar, Inc.*, 765 F. Supp. 1418, 1418-1419 (W.D. Mo.) (action brought June 13, 1991; preliminary injunction issued June 26, 1991), aff'd, 985 F.2d 564 (8th Cir. 1991). Further remedies may also be available under Section 502(a)(3) of ERISA, which provides, *inter alia*, for "appropriate equitable relief" to "redress" violations of ERISA (including its fiduciary-duty provisions, see *Varity Corp.*, 516 U.S. at 507-515) or of an ERISA plan.[13]

---

at 8-11, 15-17, *Black & Decker Disability Plan* v. *Nord*, 538 U.S. 822 (2003) (No. 02-469).

[13] Although this Court has construed Section 502(a)(3) not to authorize an award of money damages against a non-fiduciary, it has also recognized that the "equitable relief" authorized by Section 502(a)(3) means relief typically available in equity. See *Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U.S. 204, 210, 217 (2002); *Mertens* v. *Hewitt Assocs.*, 508 U.S. 248, 248-250, 256-258 (1993). Neither *Great-West* nor *Mertens* involved actions against a fiduciary. After *Great-West*, the government has taken the position in several cases pending in the courts of appeals that Section 502(a)(3) allows at least some forms of "make-whole" relief against a breaching fiduciary in light of the general availability of such relief in equity at the time of the divided bench. See generally Sec'y of Labor Amicus Br. at 19-23, *Mathews* v. *Chevron Corp.*, Nos. 02-15936 & 02-16209

28

Second, Congress required plans to establish a claims procedure in accordance with regulations of the Secretary of Labor. 29 U.S.C. 1133. The Department of Labor's new claims regulations, applicable to plan years beginning July 1, 2002, see 66 Fed. Reg. 35,886 (2001), specifically address managed care decision-making by including short time frames for a group health plan's decisions on claims. See 29 C.F.R. 2560.503-1(f)(2)(i) (decision no later than 72 hours after receipt of claim for urgent care claims); 29 C.F.R. 2560.503-1(f)(2)(iii)(A) (not later than 15 days for a pre-service claim, subject to one extension for matters beyond plan's control). Those new regulations may reduce the need for and incidence of court challenges. See *Pryzbowski* v. *U.S. Healthcare, Inc.*, 245 F.3d 266, 275 (3d Cir. 2001).

Third, States may provide for an independent review of HMO medical necessity decisions. *Rush*, 536 U.S. at 359-360.

---

(9th Cir. filed Nov. 25, 2002). Historically, a beneficiary's claim against a trustee for a breach of trust was typically remedied *exclusively* in the courts of equity because the beneficiary had only an equitable, not a legal interest, in the trust and its assets. See Restatement (Second) of the Law of Trusts §§ 2 cmts. e and f, 197 (1959). A beneficiary therefore could maintain a suit in equity to obtain various forms of relief, including to compel the trustee to perform his duties as trustee, to enjoin the trustee from committing a breach, and "to compel the trustee to redress a breach of trust." *Id.* § 199(a)-(c). The trustee's liability in the event of a breach gave rise to various alternative remedies, including a remedy that "will put [the beneficiary] in the position in which he would have been if the trustee had not committed the breach of trust." *Id.* § 205 & cmt. a. A monetary recovery in those circumstances did not require a showing of unjust enrichment. See, *e.g.*, *id.* § 205, cmt. c; *Strom* v. *Goldman, Sachs & Co.*, 202 F.3d 138 (2d Cir. 1999); *Bowerman* v. *Wal-Mart Stores, Inc.*, 226 F.3d 574 (7th Cir. 2000); see generally George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* 861, at 3-4 (rev. 2d ed. 1995). Neither *Great-West* nor *Mertens* supports the proposition that Congress intended that the courts should ignore that settled trust-law understanding dating from the days of the divided bench. There is no occasion for the Court to address that issue here. Judicial acceptance of this position would, however, provide an effective remedy in many cases where the remedy under Section 502(a)(1)(B) may be inadequate.

29

Such review also decreases the chances that a claimant will be harmed by an erroneous HMO coverage decision. See *GAO Report* 24 (external review procedure "could resolve disputes before harm occurred and could prevent the need for lawsuits later on"); Gail B. Agrawal & Mark A. Hall, *What If You Could Sue Your HMO? Managed Care Liability Beyond the ERISA Shield*, 47 St. Louis U. L.J. 235, 278 (2003)).

Finally, claimants may also sue their treating physicians for malpractice if the physicians' actions of commission or omission fall below the standards set for appropriate medical care. See, *e.g.*, *Pryzbowski*, 245 F.3d at 279. Courts have also held that HMOs may be sued under state law, without preemption by ERISA, when they are vicariously liable for a treating physician's decisions. See, *e.g.*, *In re U.S. Health-care, Inc.*, 193 F.3d 151, 162 (3d Cir. 1999), cert. denied, 530 U.S. 1242 (2000); *Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 851-854 (Fla. 2003). In addition, HMOs like petitioner Aetna and CIGNA in this case have an incentive to inform participants clearly that they provide only coverage, not treatment, and that an HMO determination not to provide coverage does not preclude claimants from obtaining care recommended by a treating physician through other sources of funds.

2. Failing to find preemption of state remedies would "completely undermine[]" Congress's decision to include certain remedies and exclude others under ERISA itself. *Ingersoll-Rand*, 498 U.S. at 144 (quoting *Pilot Life*, 481 U.S. at 54). As employers have noted, imposition of liability under state law could prevent employers from designing innovative health plans that are consistent across state borders and could make employers less willing to provide health benefits because of the higher costs associated with them. *GAO Report* 22; see also *id.* at 27. That result would

30

frustrate ERISA's broader goal of promoting the interests of participants and beneficiaries.

Indeed, permitting such suits against HMOs that provide health care through ERISA plans could easily lead to large punitive damage awards—something that ERISA itself, with its tailored remedies, does not allow. See *Dardinger* v. *Anthem Blue Cross & Blue Shield*, 781 N.E.2d 121, 140-145 (Ohio 2002) ($30 million punitive damage award); Gail B. Agrawal & Mark A. Hall, *supra*, 47 St. Louis U. L.J. at 240 n.16 (reporting punitive damage awards of $77 million and $120 million, and an award of $80 million that was set aside on appeal for improper jury instructions and evidentiary errors). There is nothing in ERISA or in this Court's precedents that requires such a result.

## CONCLUSION

The judgment of the court of appeals should be reversed.

Respectfully submitted.

HOWARD M. RADZELY
*Solicitor of Labor*

ALLEN H. FELDMAN
*Associate Solicitor*

NATHANIEL I. SPILLER
*Deputy Associate Solicitor*

EDWARD D. SIEGER
*Attorney*
*Department of Labor*

PAUL D. CLEMENT
*Acting Solicitor General*[*]

EDWIN S. KNEEDLER
*Deputy Solicitor General*

JAMES A. FELDMAN
*Assistant to the Solicitor*
*General*

DECEMBER 2003

---

[*] The Solicitor General is recused in this case.

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
**For the Northern District of California**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELIZABETH E. EDWARDS,

        Plaintiff,

        v

THE PRUDENTIAL LIFE INSURANCE
COMPANY OF AMERICA, THE H.F.
AHMANSON & COMPANY LONG TERM
DISABILITY PLAN AND DOES #1-20,

        Defendants.

_____/

No    C 07-05807 VRW

ORDER

        On October 11, 2007, Elizabeth E Edwards ("Edwards")
filed a complaint in California state court, alleging several
claims related to denial of her disability benefits under an
employee welfare benefit plan governed by the Employee Retirement
Income Security Act ("ERISA").  29 USC § 1001, et seq.  On November
15, 2007, defendants The Prudential Life Insurance Company of
America ("Prudential") and The H F Ahmanson & Company Long Term
Disability Plan ("Plan") filed a notice of removal under 28 USC §
1441(b), removing the matter to this court.  On November 21, 2007,
defendants filed a motion to dismiss several of Edwards's claims.

1  Defendants also moved to strike Edwards's jury demand.  On November

2  29, 2007, Edwards filed a motion to remand.

3          For reasons detailed below, Edwards's motion to remand is

4  DENIED.  Defendants' motion to dismiss is GRANTED IN PART and

5  DENIED IN PART.  Defendants' motion to dismiss is GRANTED WITHOUT

6  PREJUDICE as to Edwards's claim for relief for breach of fiduciary

7  duty pursuant to 29 USC § 1132(a)(2) and her claim for failure to

8  produce documents pursuant to 29 USC § 1132(c)(1).  Defendants'

9  motion to dismiss is DENIED as to Edwards's claim for equitable

10 relief pursuant to 29 USC § 1132(a)(3).  Defendants' motion to

11 strike Edwards's jury demand is GRANTED.

12

13                                I

14          The first issue before the court is Edwards's motion to

15 remand.  Edwards filed a complaint in California state court on

16 October 11, 2007, alleging claims against the Plan and Prudential

17 related to denial of disability benefits.  Doc #22, Exh A.  On

18 October 15, 2007, Edwards attempted to serve the complaint on the

19 Plan by serving it on Washington Mutual, H F Ahmanson & Company's

20 successor in interest, through what she believed to be Washington

21 Mutual's and H F Ahmanson & Company's registered agent for service

22 of process in California, Corporation Service Company ("CSC").

23 Coleman Decl, Doc #13-3.  The parties dispute whether such service

24 was proper.  Prudential was served with the complaint on October

25 22, 2007; the parties do not dispute the propriety of this service.

26 Doc #13 at ¶4.  Defendants filed a notice of removal in this court

27 on November 15, 2007, thirty-one days after Edwards purportedly

28 served the complaint on the Plan.  Doc #1.

United States District Court
For the Northern District of California

2

**A**

The statute authorizing removal to federal district court states that

> [t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 USC §1446(b).  The statute creates a thirty-day period in which a defendant must file a notice of removal that begins when a defendant is properly served with a removable pleading.  <u>Murphy Bros, Inc v Michetti Pipe Stringing, Inc</u>, 526 US 344, 350-56 (1999) (holding that the thirty-day period begins when a copy of the initial pleading is properly served on the defendant, even if the defendant receives a copy of the pleading earlier).  The statute does not address the situation of multiple defendants served separately on different dates.  This court, like the majority of courts, hews to the first-served defendant rule, the traditional rule holding that the time to file a notice of removal ends thirty days after the first defendant is served.  See, e g, <u>Uriarte v R&J Machinery</u>, 2000 US Dist Lexis 18084 (ND Cal), <u>Varney v Johns-Manville Corp</u>, 653 F Supp 839 (ND Cal 1987); <u>Transport Indemnity Co v Financial Trust Co</u>, 339 F Supp 405 (CD Cal 1972).

Under the first-served defendant rule, if the Plan was properly served on October 15, then the thirty-day period for filing a notice of removal began on October 15 and ended on November 14, and the filing of the notice of removal on November 15 was untimely.  If, on the other hand, service on the Plan was

1    improper, then the thirty-day period did not begin until Prudential

2    was served on October 22, and the filing of the notice of removal

3    on November 15 was timely.

4

5                                    B

6         The sufficiency of service of process prior to removal

7    from state court is determined under state law.  <u>Lee v City of</u>

8    <u>Beaumont</u>, 12 F3d 933, 936-37 (9th Cir 1993).  Edwards argues that

9    service of the Plan was proper in this case because H F Ahmanson &

10   Company was the Plan administrator, and ERISA provides that service

11   of a plan administrator constitutes service of a plan.  Doc #29 at

12   7; 29 USC § 1132(d).  It does appear that CSC received a copy of

13   the summons and complaint and forwarded these to Washington Mutual

14   Bank on October 15.  Proctor Decl, Doc #20, Exh C.  Edwards argues

15   that because Washington Mutual acquired H F Ahmanson & Company in

16   1998, service on H F Ahmanson & Company was properly effected by

17   service on Washington Mutual.  Doc #29 at 7.  Edwards, however,

18   cites no authority for this proposition, and the court has found

19   none.  The court cannot conclude that the Plan was properly served

20   by Edwards's attempted service on Washington Mutual through CSC.

21        Nor can the court conclude that the purported plan

22   administrator was properly served through CSC.  While CSC was at

23   one time H F Ahmanson & Company's designated agent for service, on

24   April 25, 2005, H F Ahmanson & Company filed with the California

25   Secretary of State a certificate surrendering its right to transact

26   intrastate business and revoking its designation of CSC as agent

27   for the service of process.  Doc #18, Exh 1.  Under these

28   circumstances, service of H F Ahmanson & Company is properly

                                     4

1    effected by service on the California Secretary of State.  Cal Corp

2    Code § 2114(b).  Edwards, however, did not serve the California

3    Secretary of State.

4         The court concludes that H F Ahmanson & Company was not

5    properly served with the complaint and that the filing of the

6    notice of removal on November 15, 2007 was timely.

7

8                                   C

9         Edwards's stronger argument in support of her motion for

10   remand is that the Plan did not unambiguously join the notice of

11   removal, and that the unanimity requirement for removal was not

12   met.  Doc #12 at 4-7.  Under the unanimity requirement, in cases

13   involving multiple defendants, removal requires the unanimous

14   agreement of all defendants, Hewitt v City of Stanton, 798 F2d

15   1230, 1232 (9th Cir 1986), but the requirement does not apply to

16   defendants not properly served.  Emrich v Touche Ross & Co, 846 F2d

17   1190, 1193 n1 (9th Cir 1988).  Since the Plan was not properly

18   served, it need not have joined in the notice of removal and the

19   court need not address the parties' arguments regarding whether the

20   Plan joined Prudential in the notice of removal.

21        Alternatively, Edwards asserts that if the Plan was not

22   properly served, then Prudential was required to explain the Plan's

23   absence in its notice of removal.  According to this argument,

24   Prudential's failure to explain that the Plan did not join the

25   removal because it was improperly served makes Prudential's notice

26   of removal defective.  To support this position, Edwards cites

27   Morales v Safeway Stores, 2002 WL 202367 (N D Cal) (Walker, J), and

28   Garcia-Pardini v Metropolitan Life Ins Co, 2001 WL 590037 (N D Cal)

                                   5

United States District Court
For the Northern District of California

1  (Walker, J).  Remand was granted in those cases because the

2  removing defendants failed to explain the absence of the non-

3  joining defendants in their notices of removal, but the facts of

4  those cases were critically different from the facts here.

5          In Morales, the missing defendant had been properly

6  served prior to the filing of the notice of removal, so it was

7  required by the unanimity rule to join in the notice of removal.

8  Morales, 2002 WL 202367 at *1.  In this case, as discussed above,

9  the Plan was not properly served and was not required to join.  In

10 Garcia-Pardini, a defendant that was arguably not properly served

11 did not join in the notice of removal, and the notice of removal

12 did not explain the absence of the non-joining defendant.

13 Following the rule set forth in Prize Frize, Inc v Matrix (US) Inc,

14 167 F3d 1261, 1266 (9th Cir 1999), that where fewer than all

15 defendants have joined in a notice for removal, the removing party

16 must explain the absence of any co-defendants in the notice, this

17 court ordered remand because the removing defendant did not explain

18 in its removal notice that the non-joining defendant was missing

19 due to improper service.  Garcia-Pardini, 2001 WL 590037 at *2.

20 Unlike the non-joining defendant in Garcia-Pardini, the Plan was

21 not absent from the removal notice.  On the contrary, the Plan was

22 characterized in the first sentence of the removal notice as

23 joining in the removal.  Doc #1 at 1.  Whether or not the Plan

24 effectively joined in the notice of removal, the notice did not,

25 like the notice in Garcia-Pardini, leave unexplained a defendant's

26 absence.

27         Finally, Edwards argues that the Plan waived any

28 objections based on defective service by participating in

6

United States District Court
For the Northern District of California

1   defendants' motion to dismiss.  Doc #29 at 8-9.  Edwards is correct

2   that by joining in the 12(b)(6) motion, the Plan waived its right

3   to challenge personal jurisdiction or service of process.  See FRCP

4   12(h)(1).  But in arguing that improper service of the Plan excused

5   it from joining in the notice of removal, defendants are not

6   actually challenging personal jurisdiction or service of process.

7   Rather, defendants are simply making clear that the condition

8   precedent for beginning the thirty-day period for removal and for

9   requiring the Plan to join in the notice of removal — proper

10  service — did not occur on October 15, 2007.

11       Having determined that defendants' notice of removal was

12  timely filed, that the Plan was not required to join the notice of

13  removal, that Prudential was not required to assert improper

14  service in its notice of removal and that the challenge to remand

15  based on improper service was not waived, the court finds that

16  removal was proper.  Edwards's motion to remand will be denied.

17

18                              II

19       The court next turns to defendants' motion to dismiss.

20  In her complaint, Edwards asserts four causes of action.  Edwards's

21  first cause of action is against all defendants for recovery of

22  employee benefits under 29 USC § 1132(a)(1)(B); her second cause of

23  action is against Prudential and Does #11-20 for breach of

24  fiduciary duty under 29 USC §§ 1104(a)(1), 1109, 1132(a)(2) and

25  1132(a)(3); her third cause of action is against Prudential and

26  Does #11-20 for equitable relief under 29 USC § 1132(a)(3); her

27  fourth cause of action is against Prudential and Does #11-20 for

28  failure to produce documents under 29 USC § 1132(c)(1).  Doc #22,

United States District Court
For the Northern District of California

1 | Exh A.  Defendants move to dismiss Edwards's second, third and

2 | fourth claims under FRCP 12(b)(6); they do not challenge her first

3 | cause of action.  Doc #5.

4 |

5 | A

6 | A Rule 12(b)(6) motion to dismiss serves to test the

7 | sufficiency of the complaint.  Any defects justifying dismissal

8 | must appear in the complaint.  See Levine v Diamanthuset, Inc, 950

9 | F2d 1478, 1483 (9th Cir 1991).  In order to state a claim a

10 | complaint does not need detailed factual allegations, but it must

11 | proffer enough facts to state a claim for relief that is plausible

12 | on its face.  Bell Atlantic Corp v Twombly, 127 S Ct 1955, 1974

13 | (2007).

14 | When considering a motion to dismiss, a court must (1)

15 | construe the complaint in the light most favorable to the

16 | plaintiff, (2) accept all well-pleaded factual allegations as true

17 | and (3) determine whether the plaintiff can prove any set of facts

18 | to support a claim.  See Cahill v Liberty Mutual Ins Co, 80 F3d

19 | 336, 337-38 (9th Cir 1996).  No matter how unlikely the facts

20 | alleged are, they must be accepted as true for purposes of the

21 | motion.  See Neitzke v Williams, 490 US 319, 323 (1989).  When it

22 | is possible to draw more than one inference from a complaint's

23 | allegations, the court must adopt whatever reasonable inference

24 | exists to support a valid claim.  See Columbia Natural Resources,

25 | Inc v Tatum, 58 F3d 1101, 1109 (6th Cir 1995).  Dismissal is proper

26 | only if the complaint fails to put forth a cognizable legal theory

27 | or lacks sufficient facts to support such a theory.  See Balisteri

28 | v Pacifica Police Dept, 901 F2d 696, 699 (9th Cir 1990).

8

B

Edwards's second cause of action, for breach of fiduciary duty, arises under 29 USC § 1132(a)(2), which empowers the Secretary of Labor or a plan participant, beneficiary or fiduciary to bring an action under 29 USC § 1109, which in turn establishes liability for breach of fiduciary duty:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 USC § 1109(a). Section 1132(a)(2) authorizes beneficiaries such as Edwards to bring actions against plan fiduciaries only to the extent that they "do so for the benefit of the plan and not their individual benefit." Cinelli v Sec Pac Corp, 61 F3d 1437, 1445 (9th Cir 1995) (dismissing § 1132(a)(2) breach of fiduciary duty action where claim was for benefits for plaintiff and other individuals similarly situated, not for injury to the plan).

In this case, Edwards has not adequately pleaded a claim for relief under 29 USC § 1132(a)(2). It is not sufficient that Edwards brings her cause of action "on behalf of all other the [sic] participants and beneficiaries of the Plan." Doc #22, Exh A at ¶24. Rather, Edwards must allege wrongdoing the remedy of which would benefit the Plan as a whole, and not just individual plaintiffs. See Horan v Kaiser Steel Ret Plan, 947 F2d 1412, 1418 (9th Cir 1991). The wrongdoing alleged by Edwards in support of her § 1132(a)(2) claim is enumerated in ten sub-paragraphs of her

United States District Court
For the Northern District of California

1 complaint, Doc #22, Exh A at ¶27, but the core of all of these

2 allegations is that Prudential wrongfully denied her benefits and

3 the benefits of other similarly situated beneficiaries.  Any remedy

4 designed to cure this wrongdoing would inure to the benefit only of

5 Edwards and other similarly situated beneficiaries, not to the

6 benefit of the Plan as a whole as required by <u>Horan</u>.  Defendants'

7 motion to dismiss should be granted with leave to amend as to

8 Edwards's second cause of action for breach of fiduciary duty.

9

10                                 C

11        Edwards's third cause of action, for equitable relief, is

12 based on 29 USC § 1132(a)(3), which states that a civil action may

13 be brought:

        by a participant, beneficiary, or fiduciary (A) to enjoin
14      any act or practice which violates any provision of this
        subchapter or the terms of the plan, or (B) to obtain
15      other appropriate equitable relief (i) to redress such
        violations or (ii) to enforce any provisions of this
16      subchapter or the terms of the plan.

17
29 USC § 1132(a)(3).  Unlike claims brought under § 1132(a)(2), §
18
1132(a)(3) claims need not seek relief for the plan as a whole.
19
Defendants argue that their motion to dismiss should nonetheless be
20
granted on the grounds that § 1132(a)(1)(B) - the basis for
21
Edwards's first cause of action, which defendants have not
22
challenged - provides an available adequate remedy.  Doc #5 at 6.
23
       The Supreme Court has described § 1132(a)(3) as a
24
"catchall" that acts as a "safety net, offering appropriate
25
equitable relief for injuries caused by violations that [ERISA] §
26
502 does not elsewhere adequately remedy." <u>Varity Corp v Howe</u>, 516
27
US 489, 512 (1996).  Two Ninth Circuit decisions following <u>Varity</u>
28

                                 10

United States District Court
For the Northern District of California

1  confirm that a district court may dismiss, at the summary judgment

2  stage, claims based on § 1132(a)(3) when the plaintiff also seeks

3  relief under § 1132(a)(1)(B).  <u>Ford v MCI Comm Corp Health &</u>

4  <u>Welfare Plan</u>, 399 F3d 1076, 1083 (9th Cir 2005); <u>Forsyth v Humana</u>,

5  <u>Inc</u>, 114 F3d 1467, 1474-75 (9th Cir 1997).  But dismissing claims

6  as early in the litigation as this is a different matter.  Two

7  judges within this district recently denied motions to dismiss §

8  1132(a)(3) claims in cases factually similar to this one, refusing

9  to "read <u>Forsyth</u> or <u>Ford</u> to stand for the broad proposition that a

10 Plaintiff may not seek relief under § 1132(a)(3) merely because he

11 or she has also *pleaded* a claim under § 1132(a)(1)(B), § 1132(a)(2)

12 and/or other ERISA remedial sections."  <u>Ehrman v Standard Ins Co</u>,

13 2007 WL 1288465 at *4 (N D Cal) (Jenkins, J); <u>Finkelstein v</u>

14 <u>Guardian Life Ins Co of America</u>, 2007 WL 4287329 (N D Cal) (Breyer,

15 J).

16      The court agrees with <u>Ehrman</u> that such a broad reading of

17 <u>Forsyth</u> and <u>Ford</u> is contrary to the Supreme Court's recognition in

18 <u>Varity</u> that "even where Congress has fashioned a remedial provision

19 for a class of injury, there may still be circumstances where

20 additional equitable relief under § 1132(a)(3)'s 'catch-all'

21 provision is appropriate."  <u>Ehrman</u>, 2007 WL 1288465 at *4 (citing

22 <u>Varity</u>, 516 US at 515).  And, as in <u>Ehrman</u> and <u>Finkelstein</u>, the

23 court is not prepared to rule at this early point in the litigation

24 that the equitable relief that Edwards seeks under § 1132(a)(3) is

25 entirely foreclosed.  Defendants may ultimately be correct that

26 Edwards's § 1132(a)(3) claims are merely "attempts to artfully

27 plead around the fact that she solely seeks recovery of her

28 disability benefits," Doc #25 at 4, but on a Rule 12(b)(6) motion

United States District Court
For the Northern District of California

1   to dismiss, the allegations in Edwards's complaint must be viewed

2   in the light most favorable to her.  Edwards's complaint does

3   allege wrongdoing that goes beyond mere wrongful calculation of

4   benefits, including habitual violation of fiduciary duties of skill

5   and loyalty, Doc #22, Exh A at ¶30, unreasonable failure to adopt

6   and implement reasonable or proper standards for the investigation,

7   processing and adjudication of claims, Doc #22, Exh A at ¶27, and

8   other instances of wrongdoing that arguably could not be remedied

9   by damages under § 1132(a)(1)(B).

10          The court recognizes that the Fourth Circuit's opinion in

11   Korotynska v Metropolitan Life Insur Co, 474 F3d 101, 106-07 (4th

12   Cir 2006), arguably supports granting defendants' motion.  In

13   Korotynska, the Fourth Circuit affirmed a district court's judgment

14   on the pleadings based on its belief that the plaintiff's sole

15   purpose in seeking relief was to recover benefits, despite

16   plaintiff's allegations that the defendant insurer engaged in

17   "systematically flawed and abusive claims and administration

18   procedures."  Korotynska, 474 F3d at 103.  The court agrees with

19   Finkelstein that Korotynska was based on the "the implicit

20   conclusion that the court may look beyond the pleadings at this

21   early stage," and that a more prudent approach is to accept a

22   plaintiff's allegations of wrongdoing beyond mere denial of

23   benefits, regardless whether the court believes that what a

24   plaintiff truly seeks is simply compensation for the denial of her

25   own benefits.  Finkelstein, 2007 WL 4287329 at *4 n1.  The court

26   declines to dismiss Edwards's claim for equitable relief at this

27   stage in the proceedings.

28

**United States District Court**
For the Northern District of California

D

1

2       Edwards's fourth cause of action, against Prudential and

3   Does #11-20 for failure to produce documents, was brought pursuant

4   to 29 USC §§ 1109, 1024(b)(4) and 1132(c)(1) and 29 CFR §

5   2575.502c-1.  Together, these provisions impose civil penalties on

6   plan administrators and sponsors who fail to provide certain

7   documents upon request to plan beneficiaries.  Edwards alleges that

8   she made a proper request for such documents, and that Prudential

9   did not provide the documents as required.  Doc #22, Exh A at ¶35.

10  Prudential, however, argues that it cannot be assessed such

11  penalties because it is neither the plan sponsor nor the plan

12  administrator.  Liability under § 1132(c)(1) is generally only

13  imposed on plan administrators and sponsors.  <u>Moran v Aetna Life</u>

14  <u>Ins Co</u>, 872 F2d 296, 298-99 (9th Cir 1989).  The statute's language

15  imposes liability on "any administrator."  29 USC § 1132(c)(1).

16  Administrator is defined as:

17          (i) the person specifically so designated by the terms of
            the instrument under which the plan is operated; (ii) if
18          an administrator is not so designated, the plan sponsor;
            or (iii) in the case of a plan for which an administrator
19          is not designated and a plan sponsor cannot be
            identified, such other person as the Secretary may by
20          regulation prescribe.

21  29 USC § 1002(16)(A).  In <u>Moran</u>, the Ninth Circuit held that

22  because the defendant insurance company did not fall within the

23  statutory definition of administrator, it could not be liable under

24  § 1132(c)(1).  Since H F Ahmanson & Company is identified as the

25  plan administrator and plan sponsor in the plan documents, Ewing

26  Decl, Doc #8, Exh A at 26, it appears that H F Ahmanson & Company –

27  not Prudential – is the administrator upon which § 1132(c)(1)

28  imposes liability.

13

1       Edwards argues that Prudential should be held liable as a

2   de facto plan administrator, and that whether Prudential is a de

3   facto administrator is a question of fact not amenable to decision

4   at the motion to dismiss stage.  Doc #17 at 17.  The court need not

5   reach the factual question whether Prudential is a de facto

6   administrator to dismiss Edwards's claim because the court is bound

7   by the statutory definition of "administrator" set out in §

8   1002(16)(A) and discussed in Moran.  The cases Edwards cites do not

9   support her assertion that an entity can be held liable as a de

10  facto administrator under § 1132(c)(1); they arguably support §

11  1132(a)(1)(B) liability of insurers who are de facto plan

12  administrators, but they do not address liability under §

13  1132(c)(1).  See Everhart v Allmerica Fin Life Ins Co, 275 F3d 751,

14  755-56 (9th Cir 2001); Leung v Skidmore, Owings & Merrill, 213 F

15  Supp 2d 1097, 1101-02 (N D Cal 2002); Moody v Liberty Life Assur

16  Co, 2007 WL 1174828 at *4 (N D Cal).  Unlike § 1132(a)(1)(B), §

17  1132(c)(1) specifically limits its application to administrators.

18  The court is reluctant to use a definition of "administrator"

19  broader than that set forth in § 1002(16)(A) and, in so doing,

20  declare the Moran rule overturned.  Edwards's fourth cause of

21  action for failure to produce documents is dismissed with leave to

22  amend.

23

24                              III

25       Finally, defendants request an order striking Edwards's

26  demand for a jury trial.  Doc #5 at 11.  The rule in the Ninth

27  Circuit is that participants and beneficiaries of ERISA-governed

28  plans are not entitled to jury trials for claims brought under §

United States District Court
For the Northern District of California

14

United States District Court
For the Northern District of California

1    502 of ERISA.   Thomas v Oregon Fruit Products Co, 228 F3d 991, 996

2    (9th Cir 2000); Borst v Chevron Corp, 36 F3d 1308, 1324 (9th Cir

3    1994).   Edwards argues that this rule has been overturned by Great-

4    West Life & Annuity Insur Co v Knudson, 534 US 204 (2002); it has

5    not.   In Great-West, an insurer attempted to file a subrogation

6    action against plan beneficiaries under 29 USC § 1132(a)(3).   The

7    court held that the nature of the relief sought by the insurance

8    company was legal and therefore not authorized by § 1132(a)(3)'s

9    equitable relief provision.   Great-West at 210.   Great-West did not

10   address whether a damages claim under 29 USC § 1132(a)(1)(B) is, as

11   Edwards argues, a legal claim that entitles plaintiffs to a jury

12   trial.   The Ninth Circuit rule stated in Thomas and Borst has not

13   been changed.   Edwards's demand for a jury trial will be denied.

14

15                                   IV

16          For the reasons discussed above, Edwards's motion to

17   remand is DENIED.   Doc #12.   Defendants' motion to dismiss is

18   GRANTED IN PART and DENIED IN PART.   Defendants' motion to dismiss

19   is GRANTED WITHOUT PREJUDICE as to Edwards's claim for relief for

20   breach of fiduciary duty pursuant to 29 USC § 1132(a)(2) and her

21   claim for failure to produce documents pursuant to 29 USC §

22   1132(c)(1).   Doc #5.   Defendants' motion to dismiss is DENIED as to

23   Edwards's claim for equitable relief pursuant to 29 USC §

24   1132(a)(3).   Doc #5.   Defendants' motion to strike Edwards's jury

25   demand is GRANTED.   Doc #5.

26          In addition to the motions discussed above, on December

27   20, 2007, defendants moved to strike portions of Edwards's

28   opposition and supporting evidence to defendants' motion to

                                   15