IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH FOWLER, | No. C 08-03463 WHA |
| Plaintiff, | |
| v. | **ORDER RE MOTIONS FOR SUMMARY JUDGMENT** |
| AETNA LIFE INSURANCE COMPANY, *et al.*, | |
| Defendants. | |

**INTRODUCTION**

This action, brought under the Employment Retirement Income Security Act, 29 U.S.C. 1001 *et seq.*, challenges a denial of disability benefits. Plaintiff Elizabeth Fowler and defendant Aetna Life Insurance Company have filed cross motions for summary judgment.

**STATEMENT**

Plaintiff Elizabeth Fowler, a 33-year old woman, was employed as a transportation specialist by defendant Parsons Brinckerhoff and was a participant in its employee-benefit plan. The plan was insured by defendant Aetna Life Insurance Company. Her job was to prepare environmental impact review reports for municipal transportation projects.

Plaintiff has complained of low back pain and right leg pain over the last few years. She plainly has scoliosis and degenerative disc disease. Her physician, Dr. Rick Delamarter, prepared a report summarizing plaintiff's condition and related findings after an office visit in July 2006. According to the report, a discogram performed on September 24, 2004 "was

positive and concordant at L4-L5 and L5-S1" and an MRI study done on June 22, 2006, demonstrated "disc desiccation at L2-L3, L4-L5, and L5-S1 with high intensity zones posteriorly at L4-L5 and L5-S1 [and] a disc protrusion at L4-L5 with facet hypertrophy and ligamentum flavum laxity" (AF000308). Dr. Delamarter also noted that plaintiff was "a well appearing female in no acute distress" but she had tried physical therapy, facet blocks, and epidurals without relief (*ibid.*). The doctor concluded she was a good candidate for disc replacement surgery at L4-L5 and L5-S1. On October 16, 2006, plaintiff visited Dr. Delamarter again for a follow-up examination to discuss the surgery, and she continued to report significant lumbar spine pain.

On January 2, 2007, plaintiff filed a claim for disability benefits under the short-term disability plan. To qualify as disabled for short-term benefits, the plan required that (AF000003):

> You are not able, solely because of disease or injury, to perform the material duties of your own occupation.
>
> You will not be deemed to be performing the material duties of your own occupation if:
>
> > you are performing some of the material duties of your own occupation; and
> >
> > solely due to disease or injury, your income is 80% or less of your predisability earnings.

"Material duties" was defined as duties "normally required for the performance of your own occupation; and . . . cannot be reasonably: omitted or modified" (AF0000015). "Own occupation" was defined as "the occupation you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed" (*ibid.*). To receive long-term disability benefits for the first 24 months, the claimant had to be totally disabled from working in her "own occupation." After 24 months, the claimant had to be totally disabled from working in "any occupation" to continue to receive long-term disability benefits.

According to plaintiff's claim, she could not perform some of her job duties, including sitting and traveling. The parties dispute whether her position required sedentary or light-duty

2

1  work. She also indicated that she planned to have surgery but her medical insurance company
2  (not our defendant) had denied her request.

3  Shortly after plaintiff applied for disability, Dr. Delamarter completed an attending
4  physician statement dated January 9, 2007, and he submitted it to Aetna. The statement
5  indicated that plaintiff's initial medical visit was on July 26, 2006, and her last visit was on
6  October 16, 2006. According to the statement, plaintiff was physically capable of doing the
7  following occasionally (*i.e.,* 0.5 to 2.5 hours): sit, stand, walk, drive, and use her upper
8  extremity. She, however, could not lift, push, pull, or bend and she could not do hand grasping,
9  repetitive motions, or reaching. Dr. Delamarter indicated that these capabilities were for an
10 indefinite period. He stated she was not capable of working at all then, and he estimated her
11 date of return would be April 28, 2007.

12 On January 16, 2007, Aetna certified her as disabled for the period of January 8, 2007 to
13 March 10, 2007, and the company paid plaintiff's short-term benefits for this period. To
14 receive continued benefits, plaintiff was required to submit additional information, including an
15 attending physician statement.

16 On March 9, 2007, Dr. Delamarter submitted another attending physician statement.
17 Besides reiterating the limitations in the earlier statement, he also classified plaintiff in the
18 highest physical impairment category, which corresponded with "[s]evere limitation of
19 functional capacity, incapable of minimal (sedentary) activity" (AF000312). The statement also
20 noted that plaintiff was still waiting for authorization of her surgery.

21 Aetna's in-house nurse, Erika M. Dickens, reviewed plaintiff's claim, and concluded she
22 was not actively under the care of a doctor. This observation was included in a letter dated
23 March 11, 2007, which notified plaintiff of the denial of the continuation of her short-term
24 disability benefits. The letter also noted that plaintiff's last office visit was October 16, 2006,
25 which was before the date of her claim. It further stated that she had not provided sufficient
26 clinical information to show she was totally disabled.

27 On May 4, 2007, plaintiff informally appealed Aetna's termination. She submitted an
28 unsigned copy of medical notes from her doctor, Dr. Delamarter, which stated that she

"continues to have limited range of motion in the lumbar spine region and severe lumber spine pain" (AF000322). Dr. Delamarter's observations were apparently based on an examination of plaintiff on April 11, 2007, and a discogram and CT scan of her lower lumbar spine that was performed on April 10, 2007. Aetna's nurse reviewed the new medical notes and concluded it was not sufficient. The nurse concluded that Aetna needed clinical information that showed that plaintiff was impaired from her own occupation. On May 29, 2007, Aetna confirmed its denial in a letter. The letter stated Aetna would review any additional information and listed examples of such information.

Plaintiff formally appealed the denial on September 8, 2007. With her appeal letter, she included yet more documentation from Dr. Delamarter, repeating the same restrictions regarding physical activities and explaining that she had become progressively worse since March 2007. She also included her health insurer's three denials of her claim for surgery and the operative report for the discogram and CT scan performed. She indicated she would have her spinal surgery on September 11, 2007, which she did, and her health insurer ultimately approved coverage for the surgery.

Aetna obtained an outside review from Dr. Lawrence Blumberg, who is board certified in orthopedic surgery. On November 28, 2007, based on a document review only, Dr. Blumberg determined that the records did not support a functional impairment that precluded plaintiff from performing her occupation from March 10, 2007 (the date Aetna discontinued benefits) to September 10, 2007 (the day before plaintiff's surgery). Dr. Blumberg concluded (AF000466):

> In spite of the claimant's subjective complaints, no physical examination was provided to demonstrate the claimant's inability to perform sedentary work activities. No motor strength deficits and range of motion deficits were noted. No significant neurological deficits were noted. There was no evidence the claimant could not sit, stand, or ambulate. There was no evidence the claimant cannot lift up to 10 pounds. Therefore, the records failed to support a functional impairment that precluded work from 3/10/07 to 9/10/07. As of 9/11/07 through to the present, the claimant would be impaired because she is postoperative for lumbar disk replacement at 2 levels.

4

1   Based on these conclusions, Aetna upheld its initial denial of benefits in a letter dated
2   December 4, 2007. It stated "the clinical notations did not establish a functional impairment
3   from March 10, 2007 forward" (AF000358).

4   Plaintiff appealed Aetna's denial of benefits again, and she provided additional medical
5   documentation addressing pre- and post-surgery examinations and reports. According to a
6   report dated March, 31, 2008, Dr. Blumberg again reviewed plaintiff's file and concluded the
7   evidence did not change his prior decision. He further determined that it would be reasonable
8   to preclude sedentary work for the period of September 11, 2007 (*i.e.,* the day of plaintiff's
9   surgery) to January 31, 2008 due to post-operative pain.

10   Aetna requested an in-house vocational rehabilitation assessment on April 3, 2008. The
11   vocational rehabilitation consultant determined that plaintiff's occupation was sedentary and
12   resembled a project director, which included job duties such as planning, directing, and
13   coordinating activities of designated projects to ensure the goals or objectives of the product are
14   accomplished within the prescribed time frame and funding parameters. The consultant also
15   concluded that plaintiff had project-engineer duties such as coordinating project activities with
16   activities of governmental agencies.

17   On April 15, 2008, Aetna reasserted its denial of benefits. Aetna stated that, as noted in
18   the letter dated December 4, 2007, Aetna had completed the review of her appeal. It further
19   noted that plaintiff was previously advised that she had exhausted the appeal procedures, and
20   the decision was not subject to further review. Aetna advised plaintiff that she had the right to
21   bring a civil action.

22   Plaintiff filed this action on July 18, 2008. The complaint alleges two claims. The first
23   is for recovery of past and future benefits under Section 502(a)(1)(B) of ERISA. The second is
24   for equitable relief under Section 502(a)(3).

25   Defendants previously moved to strike the first claim as it related to future benefits, and
26   that motion was granted. Defendants also moved to dismiss plaintiff's second claim in its
27   entirety but that motion was denied as premature. Now, both parties move for summary
28   judgment.

**ANALYSIS**

As a threshold matter, the applicable standard of review must be determined. A district court review of denials is de novo unless the plan gives the administrator discretionary authority to determine eligibility for benefits. If the plan grants discretionary authority, the administrator's decision is reviewed for abuse of discretion. *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008). The relevant provision of the plan broadly stated (AF000150):

> Under Section 503 of Title 1 of [ERISA], Aetna is a fiduciary. It has complete authority to review all denied claims for benefits under this policy. In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:
>
> > determine whether and to what extent employees and beneficiaries are entitled to benefits; and
> >
> > construe any disputed or doubtful terms of this policy.

This language unambiguously conferred discretion on Aetna to determine eligibility for benefits and to interpret the plan. This order holds that the abuse-of-discretion standard applies.

The fact that Aetna here is both the claims administrator and the payor creates a conflict of interest, which must be factored into the abuse-of-discretion analysis. *Glenn* held that when the same entity determines eligibility for benefits and pays those benefits out of its own pocket, a conflict of interest is created and "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." 128 S. Ct. at 2346. The Supreme Court provided the following guidance for how a reviewing court should factor the conflict of interest into its analysis:

> We turn to the question of how the conflict we have just identified should be taken into account on judicial review of a discretionary benefit determination. In doing so, we elucidate what this Court set forth in *Firestone*, namely, that a conflict should be weighed as a factor in determining whether there is an abuse of discretion. We do not believe that *Firestone's* statement implies a change in the standard of review, say, from deferential to de novo review. . . . Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural evidentiary rules, focused narrowly upon the evaluator/payor conflict. . . . We believe that *Firestone* means what the word 'factor' implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of

6

> several different considerations of which a conflict of interest is one.

*Id.* at 2350.

Because Aetna has a structural conflict, plaintiff contends Aetna's decision should be reviewed with heightened skepticism. Addressing how little or how much to temper the abuse-of-discretion standard with skepticism, the Ninth Circuit stated that:

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Abatie v. Alta Health Insurance Co.*, 458 F.3d 955, 959 (9th Cir. 2006). While this decision pre-dated *Glenn*, this aspect of earlier Ninth Circuit law still seems to be viable. *See Nolan v. Heald College*, 551 F.3d 1148 (9th Cir. 2009).

A district court must consider the contours of the abuse-of-discretion standard before determining whether the applicable standard was violated. In some instances, this may involve evaluating evidence outside the administrative record to determine the conflict's "nature, extent, and effect, on the decision-making process." *Id.* at 1153–54.

Plaintiff points to evidence outside the administrative record to support her arguments regarding exacerbation of the conflict of interest, including self-dealing and malice, and that review should be with heightened skepticism. For example, plaintiff argues that Dr. Blumberg, Aetna's medical reviewer, was not independent. She cites to press releases from Aetna's website stating that in 2006 Aetna acquired Broadspire, a company that regularly hired Dr. Blumberg to do medical reviews. Aetna objects, arguing that the press releases are irrelevant and inadmissible. Plaintiff also cites Dr. Blumberg's deposition testimony from another case to show that there was self dealing. Aetna objects to the admission of the testimony arguing the declarant lacks personal knowledge and the testimony lacks foundation and is hearsay. These materials at least show that discovery could well show Dr. Blumberg was a "bought and paid

7

for" reviewer. This would indicate that defendants' conflict of interest should be given more weight. At the very least, plaintiff has put forth a showing that evidence outside the record may show a conflict of interest besides the structural conflict. To ensure a full bias inquiry, the Court will hold an evidentiary hearing and allow plaintiff to conduct limited conflict-of-interest discovery. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949–950 (9th Cir. 2007) (noting some discovery aimed at demonstrating a conflict of interest may be appropriate in an ERISA action).

Besides arguing that discovery is unnecessary, Aetna also contends that plaintiff's request for discovery is too broad and too late. This is not so. As stated above, some discovery is warranted to allow plaintiff to try to demonstrate with admissible evidence how the conflict infected the denial. Plaintiff requests limited discovery, including depositions of the following: (1) defendant Aetna; (2) Andres Matos, (3) Janet Clifton, Aetna's vocational consultant, and (4) Dr. Blumberg, Aetna's peer reviewer (Coleman Decl. ¶ 2). Having reviewed the bases set forth in the Coleman declaration for each deposition, the requested discovery is appropriate. Plaintiff does not seek to supplement the record with additional documentation such as more medical reports in support of her claim. Instead, the intent of the depositions is to probe the extent of Aetna's conflict of interest.

Furthermore, plaintiff timely requested discovery in opposition to Aetna's motion for summary judgment. The case management order herein stated:

> A threshold question is the extent to which the 'administrative record' should be augmented and/or discovery allowed. To tee up this issue, the following procedure will be used. On March 26, 2009, defendant shall file the 'administrative record' and its motion for summary judgment to be heard on a 35-day track. In this submission, please include a detailed declaration explaining what is and is not in the 'administrative record' and the manner and guidelines by which it was compiled.

In accordance with that order, plaintiff properly raised the need for discovery after Aetna filed its motion for summary judgment and the administrative record.[1]

---

[1] It is worth noting that plaintiff's counsel asserts that the administrative record filed in this action by Aetna did not include certain documents. Particularly, Aetna's computer print-out entitled "eTUMS Event Profile Report – Disability" was not included. Notably, the profile report stated that plaintiff's position required

8

Accordingly, this order denies all motions for summary judgment without prejudice to a full ventilation of the issues at trial.

**CONCLUSION**

The discovery must be completed by September 30, 2009. Discovery is limited to ten narrow interrogatories without sub-parts, twenty discovery requests that are narrowly drawn, and four one-day depositions as noted above. A bench trial limited to the issues of conflict of interest and bias will be held on October 26 and 27, 2009, starting at 7:30 a.m. The hearing will proceed with evidence that would be received in accordance with normal trial procedures. A pretrial conference will be held on October 13, 2009, at 3 pm. The case management conference currently set for May 21, 2009 is **VACATED**.

**IT IS SO ORDERED.**

Dated: May 15, 2009

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

light physical demand while other documents in the record say her job was sedentary. The categorization of plaintiff's job is a point of contention between the parties. Counsel also asserts that the full administrative record was not provided to plaintiff prior to the lawsuit. Discovery will be permitted into what Aetna chose to include and to exclude from the administrative record.